### INNIS *v.* HEFT.

1. JUDGMENT—ASSIGNMENTS—RIGHTS OF ASSIGNEE.
   The assignee of a judgment has no greater or other rights than those of the assignor.

2. BANKRUPTCY—POWER OF TRUSTEE TO COMPROMISE.
   Under section 27 of the bankruptcy act (30 U. S. Stat. p. 553), the trustee in bankruptcy may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate.

3. SAME—COMPROMISE—EFFECT—EQUITY.
   Where a judgment in favor of a bankrupt was adjudged an asset of his estate, and the trustee in bankruptcy, with the approval of the court, compromised with the judgment debtor by accepting a cash payment and the cancellation of claims against the estate in a large amount, a court of equity will not lend itself to enforce said judgment, in the hands of the bankrupt's wife as assignee, against land held by the judgment debtor and his wife by the entireties, on the theory that the bankruptcy court exceeded its jurisdiction in assuming to release and discharge said judgment.

Appeal from Kent; Brown (William B.), J. Submitted October 21, 1921. (Docket No. 160.) Decided December 21, 1921. Rehearing denied March 31, 1922.

Bill by Bessie R. Innis against I. Noble Heft and another to enforce the payment of a judgment. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Edgar A. Maher,* for plaintiff.

*Leonard D. Verdier,* for defendants.

MOORE, J. This suit was brought to enforce payment of a judgment at law which John A. Innis recovered against the defendant I. Noble Heft in the circuit court for the county of Kent, on June 8, 1915, for $8,100 damages and $42 costs of suit. The judgment was assigned to the plaintiff, who is his wife, by John A. Innis, November 2, 1918. The defendant Carrie B. Heft is the wife of the defendant I. Noble Heft, and the principal purpose of the suit is to subject certain real estate which has been conveyed to the defendants as tenants by the entirety to the payment of the judgment.

The defendants answered to the bill of complaint. We quote part of their answer:

"3. They deny that said judgment remains in full force and that the said damages and costs remain unpaid and unsatisfied; but show on the contrary as follows:

"(a) That the said John A. Innis, the assignor of said judgment, was duly adjudged a voluntary bankrupt on the 10th day of April, 1913, by the district court of the United States for the western district of Michigan.

"(b) That on the 11th day of December, 1916, after proper proceedings in the court having jurisdiction of the same, it was ordered and determined by the court of bankruptcy in and for the western district

of Michigan, southern division, acting through its referee in bankruptcy, that said judgment was an asset belonging to the estate of said bankrupt, the said John A. Innis.

"(c) That upon petition by the said John A. Innis for a review of the said order and determination of the said referee in bankruptcy, the same was affirmed by the district court of the United States for the western district of Michigan.

"(d) That the said defendant, Israel Noble Heft, had numerous claims, aggregating a large amount of money, against the estate of the said John A. Innis, bankrupt, which were proved and allowed in favor of said Heft and upon which he would have been entitled to participate in any dividends to creditors in the distribution of said bankrupt estate.

"(e) That on or about the 6th day of April, 1917, a certain written contract or agreement was entered into by and between Leon W. Harrington, the trustee in bankruptcy of the estate of said John A. Innis, bankrupt, and the said Israel Noble Heft, by the terms of which, subject to the confirmation and ratification of the referee in bankruptcy, said Heft agreed to discharge and release every claim and demand of every kind and nature which he then had or might thereafter have against the estate of the said bankrupt, and particularly for all dividends to which he, said Heft, might be entitled on the distribution of the said estate and said Heft did then and there pay to said trustee in bankruptcy two hundred fifty (250) dollars and further agreed to pay in addition to said trustee the sum of seven hundred fifty (750) dollars, in consideration of which said trustee agreed, subject to the confirmation and ratification of the said referee in bankruptcy, to release and discharge any and all rights and claims of every kind and nature which the said bankrupt estate had against the said Heft, including the release and discharge of the said judgment rendered against the said Heft and in favor of the said John A. Innis by the circuit court for the county of Kent, Michigan, being the same judgment upon which the bill of complaint in this cause is founded and the title to which had at that time been adjudicated to be in the said trustee.

"(*f*) That after due proceedings thereon and in the court having jurisdiction of the same, said referee in bankruptcy made and entered an order on the 31st day of July, 1917, ratifying and confirming the said agreement between the said trustee and the said Heft and authorizing and empowering said trustee to accept the balance due from the said Heft under the terms of said agreement and to release and discharge said Heft from all claims as in said agreement set forth.

"(*g*) That in accordance with the terms of said order of said referee in bankruptcy, said trustee did on the 22nd day of October, 1917, accept said balance of seven hundred fifty (750) dollars from said Heft, and gave to him his receipt in writing therefor, thereby releasing and discharging said Heft from any and all claims on account of said judgment; and said Heft waived any and all claims for dividends, and received no dividends, in the distribution of said bankrupt estate.

"(*h*) No appeal was taken from the said order of the said referee in bankruptcy and said bankrupt estate has been closed and the said John A. Innis discharged from bankruptcy."

The chancellor was of the opinion that the material averments of the answer were shown to be true, and dismissed the bill of complaint. The case is brought here by appeal. In this connection it should be stated that the proofs show that Mr. Innis at the time of the trial had not received his discharge in bankruptcy.

The claim of appellant cannot be stated better than to make two quotations from the briefs of her counsel:

"It is submitted (1) that the agreement between the defendant I. Noble Heft and the trustee of the bankrupt estate of John A. Innis relative to the judgment recovered against said Heft by said Innis, and the action of such trustee in assuming to release and discharge said judgment, were acts which the bankruptcy court had no jurisdiction or authority to approve, ratify or confirm, and (2) that upon the

termination of the bankruptcy proceeding the title to such judgment revested in said Innis, and passed by his assignment to the plaintiff in this suit (citing authorities). * * *

"Upon the basis of these authorities it was submitted by the appellant:

"'That the trustee's title to the judgment in question terminated with the termination of the bankruptcy proceedings, and could not remain in abeyance, but revested at once in the bankrupt and passed by his assignment to the plaintiff.'

"Counsel for the appellees has made no direct attempt to refute, dispute or deny these propositions, or the force or effect of the cited authorities as interpreted in the brief for the appellant. By indirection, however, it is sought to raise an inference that it was asserted on the part of the appellant, both that the trustee did, and that he did not abandon the judgment in question. That there may be no misunderstanding with regard to the attitude of the appellant in that respect (which was supposed to have been clearly defined) it is now submitted that the action of the trustee in assuming to release and discharge the judgment in question, was in excess of the powers conferred upon him by the bankruptcy law, and of the bankruptcy court to ratify or confirm, and wholly ineffectual for any legal purpose; that such action by the trustee and its assumed-to-be-ratification by the bankruptcy court did not constitute due process of law, and was void; and being void, was in legal effect, the same as though the trustee had made no effort, whatever, to dispose of or affect the status of the judgment; that the trustee failed to take effective action for the appropriation of the judgment for the benefit of the estate, and thereby the bankrupt was re-invested with power to give a good title, and did so by the assignment made by him to the plaintiff in this suit. The relevant authorities all sustain these propositions."

The proposition that plaintiff as assignee has no greater or other rights than her assignor is too axiomatic to require either argument or the citation of authorities.

Section 27 of the bankruptcy act reads:

"The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate." 30 U. S. Stat. p. 553.

There can be no doubt upon this record that the trustee undertook to make a compromise with Mr. Heft, with the approval of the bankruptcy court, and that it was given effect so far as it was in the power of the trustee and the bankruptcy court to do so. The trustee was sworn as a witness and testified as to his recollection of the transaction, and that Mr. Heft was allowed claims in one class of upwards of $2,700, and as a general merchandise creditor of from $10,500 to $11,000. The defendant was very much handicapped by the fact that many of the files in the bankruptcy proceeding could not be found.

The clerk of the United States district court was a witness. We quote some of his testimony:

"What is known as the record book of the referee in bankruptcy in this case is not here. That is made up of the proceedings in the referee's office in the particular case—petitions and orders that are made by him in any given case. * * * It was bound together in this case in the usual manner with a back to it and properly backed and filed with me—all attached as one bundle of papers. * * * The referee's record book in this case was filed September 31, 1917. I do not know where the referee's record book in this case is. After several examinations by Mr. Innis and one or two attorneys, it disappeared and I have never been able to find it. * * *

"*The Witness:* Mr. Verdier, I would like to mention the fact that you now have a paper which properly belongs in these files, or, you have shown that to me, have you not?

"*Mr. Verdier:* Yes.

"*The Court:* Was there any authority given for

that paper to be taken from the files and from your office?

"*A.* No, sir.  I did not know it was gone until Mr. Verdier showed it to me today."

A little later in the trial part of the record book and some of the original files were produced by the attorney for the plaintiff, and it developed they had been in the possession of Mr. Innis for three years, and he claimed they were given to him by an attorney he had formerly employed in his litigation.  Among the papers produced were the original claims presented by Mr. Heft in the bankruptcy court.  Some of them had marked upon them in blue pencil the word "disallowed."  When they were shown to the trustee his recollection was refreshed and he testified in part:

"Although I recall this, that a great many claims which were filed in the estate were claims that Heft filed as assignee of others who had those claims.

"*Q.* Those were never passed upon by the referee, were they?

"*A.* I think they were; I think they were allowed; that is my recollection.

"*Q.* Have you any recollection of being present when they were allowed, or seeing any record of their allowance?

"*A.* Yes, I have a recollection.  My present recollection is that I have seen the referee's notation on these claims (examines claims in file of the bankruptcy case).  They seem to be marked here 'disallowed.' * * *

"*Q.* What do you say as to whether or not all of the other creditors were those that had been proved as claims in favor of Mr. Heft?

"*A.* That is the fact.  It would require an explanation from me to give you my present recollection as to how that was handled, but the claims which had been proven in this estate by Noble Heft, no dividends were paid upon them, because of the arrangement and the agreements which had been entered into between the trustee and Heft.

"*Q.* And the creditors other than himself then, did receive something upon their claims?

"*A.* They received their dividends of 10 per cent. on the claims.

"*The Court:* How long was it before the dividends were paid or finally figured out that this arrangement was made, or agreement?

"*Mr. Verdier:* That date of the agreement, if your honor please, is April 6, 1917. The dividend checks were dated October 23, 1917."

The record disclosed that a written agreement was made between the trustee and Mr. Heft by which the latter canceled his claims of upwards of $12,000 and paid $1,000 in money, and the judgment involved in this litigation was canceled and the agreement was approved by the referee in a written order.

The trustee filed his final account. Among the disbursements appeared the following:

"To John A. Innis, bankrupt, for his expenses in connection with bringing suit against I. N. Heft and which resulted in a judgment against said Heft, which judgment has been adjudicated to belong to this estate, $105.93."

It must not be forgotten that this is a proceeding in equity. There are some facts that stand out very prominently. We recite some of them: The judgment Mr. Innis obtained against Mr. Heft was adjudged an asset of Mr. Innis, while he was a bankrupt. The trustee in bankruptcy attempted to assume dominion over, and to deal with it as an asset. He attempted to collect it. He finally made a compromise by which he received $1,000, and the cancellation of claims in a very large amount against the estate of the bankrupt. His acts were confirmed by the referee in bankruptcy. He filed his final account. This showed there was paid to Mr. Innis $105.93 to reimburse him for expenses incurred in the controversy with Mr. Heft, which litigation resulted in placing

this judgment in the column of assets of the bankruptcy estate.

The claim of the plaintiff does not appeal to the conscience of the court. A court of equity will not lend itself to the working out of such an injustice as would result if the contention of the plaintiff was allowed. See *Miller* v. *Cornwell,* 71 Mich. at p. 274; *McQuillan* v. *Ayer,* 189 Mich. at p. 572; *Northern Michigan Building, etc., Ass'n* v. *Fors,* 190 Mich. at p. 74; *Farr* v. *Childs,* 204 Mich. at p. 28.

We have examined the many authorities cited by counsel for the appellant, and think no one of them applies to a situation like the one disclosed by the record in the instant case.

The decree is affirmed, with costs to the defendants.

STEERE, C. J., and WIEST, STONE, CLARK, BIRD, and SHARPE. JJ., concurred. FELLOWS, J., did not sit.