CONTINENTAL NATIONAL BANK *v.* GUSTIN.

1. MORTGAGES—FORECLOSURE—REAL PARTY IN INTEREST.

　　Plaintiff, a national bank, which had obtained an assignment of four notes and two mortgages securing them which ran to the bank's debtor as trustee for himself and another, was holder of the legal title and could give satisfaction of the indebtedness; hence bank was the real party in interest entitled to foreclose mortgages without joining *cestuis que trustent* as parties as their rights cannot be affected by a collection of the indebtedness.

---

　　As to whether beneficiary of a trust is a necessary party in a suit in equity brought by the trustee, see 2 Restatement, Trusts, § 280, comment i.

2. ASSIGNMENTS—REAL PARTY IN INTEREST.

An assignee is a real party in interest and may sue in his own name.

3. ACTION—ASSIGNMENTS—JOINDER OF CLAIMS.

An assignee may join, with his own claim, a claim which has been assigned to him.

4. MORTGAGES—TRUSTS—DEATH OF TRUSTEE—ASSIGNMENTS.

The fact that mortgagee, named in mortgage as trustee for himself and another, died after suit to foreclose mortgage had been commenced by assignee of mortgagee does not affect such assignee's right to maintain its bill since it has legal title to the mortgages and the trust continues until its purpose is fulfilled.

5. BANKS AND BANKING—NATIONAL BANKS—TRUSTS—FORECLOSURE OF MORTGAGES.

A national bank is not forbidden, by statute relative to operation under trusts, from foreclosing a mortgage in order to collect on collateral pledged as security for loans since it may accept a mortgage or an assignment thereof in order to secure itself (12 USCA, § 248 [k] [4]).

6. SAME—NATIONAL BANKS—FORECLOSURE—FACILITY OF COLLECTION—ASSIGNMENTS.

A national bank may take an assignment of the interests of others in subject matter of collateral, previously assigned to it as security for a loan, and proceed to foreclose mortgage for the benefit of all parties concerned in order to facilitate collection of the indebtedness.

7. MORTGAGES—FORECLOSURE—DEPOSITIONS—FRAUD — DURESS — RE-OPENING PROOFS—DISCRETION OF COURT.

In suit to foreclose two real estate mortgages, brought by a national bank, an assignee thereof, wherein trial court insisted that parties complete their proofs except upon plaintiff's right to maintain their suit, a matter reserved for deposition, and cautioned defendants' counsel that after deposition was received proofs would not be reopened for matters of fraud and duress and such caution was deliberately ignored, trial court did not abuse its discretion in refusing to open proofs, after deposition was taken, for purpose of showing fraud and duress where defendants failed to discover new matter, subsequent to trial court's previous limitation, which would have justified the granting of a new trial, especially where litigation has extended for a period of upwards of six years.

8. Husband and Wife—Power of Attorney—Construction—Dower.

A wife's power of attorney, given to her husband, wherein he was authorized "to purchase, rent, sell, exchange, mortgage, lease, surrender, manage, and in every way deal with real estate or any interest therein" and "to sell, assign and transfer all my dower right, title and interest" gave him the broadest possible powers in dealing with any real estate in which the wife had an interest and its provisions are to be construed in such a way as to give effect to the intention of the parties.

9. Same—Power of Attorney—Dower.

Under power of attorney given by wife to husband and authorizing him "to purchase, rent, sell, exchange, mortgage, lease, surrender, manage, and in every way deal with real estate or any interest therein" and "to sell, assign and transfer all my dower right, title and interest," husband had authority to execute a mortgage on real estate in which wife had a dower interest, the rule that, where general provisions are followed by specific or limited provisions, the latter control being inapplicable where there is no inconsistency between the various parts of the instrument.

10. Dower—Surrender—Mortgages.

The joinder of a wife in a mortgage on property owned by her husband is to bar her dower and really to surrender her inchoate right of dower, not to mortgage it.

11. Mortgages—Recording—Subsequent Deeds of Timber Rights.

Timber rights of grantee in quitclaim deeds of mortgagors, executed after mortgages being foreclosed were recorded, are subordinate to rights of mortgagees' assignee.

12. Appeal and Error—Statement of Questions Involved—Argument—Abandonment.

Matters set forth in appellants' statement of questions involved which are not argued are deemed abandoned.

Appeal from Alpena; Smith (Fred P.), J. Submitted January 16, 1941. (Docket No. 63, Calendar No. 41,290.) Decided April 8, 1941. Rehearing denied May 21, 1941.

Bill by Continental National Bank, individually and as trustee for William McGinley and Jean W.

Taylor, against Henry K. Gustin and others, to fore-
close mortgages.   Cross bill by Henry K. Gustin
against Continental National Bank, individually and
as trustee, and others to set aside the mortgages for
fraud and duress.   From decree for plaintiff and
dismissing the cross bill, defendants appeal.   Af-
firmed.

*Dale Souter* and *Carl R. Henry,* for plaintiff.

*Henry K. Gustin,* for defendants.

McALLISTER, J.   From a decree granting plain-
tiff a foreclosure of mortgages, defendants appeal.

The principal contentions of appellants are that
the court erred in holding that plaintiff was the real
party in interest; that Federal statutes preclude
plaintiff from maintaining the suit; that error re-
sulted from the refusal of the court to permit de-
fendant Henry Gustin to take proofs on his defense
of fraud and duress; that defendant Florence
Gustin's rights in the real estate are not subject to
the mortgages; and that timber rights, conveyed to
defendant Killmaster, are improperly included in
the decree of foreclosure.

In order to determine whether plaintiff is the real
party in interest, it is necessary to examine the his-
tory of the transactions between the parties.

On December 26, 1935, plaintiff filed its bill of
complaint to obtain foreclosure of two real-estate
mortgages on approximately 4,200 acres of land
situated in the county of Alpena.   Each mortgage
was in the amount of $15,000 to secure payment of
two notes, each in the amount of $7,500, the aggre-
gate of all notes for the two mortgages being $30,000.

Defendant Henry K. Gustin executed the notes,
two of them dated September 17, 1926—each in the

amount of $7,500—payable to William McGinley and Wayne Ponting. The mortgage securing these notes was of the same date; named therein as mortgagee, William McGinley, trustee for McGinley and Ponting; and was executed by Henry K. Gustin, for himself, and for his wife, Florence V. Gustin, as her attorney in fact. The other two notes—each in the amount of $7,500, payable to McGinley and Ponting, were likewise executed by Henry K. Gustin, and dated October 14, 1926. They were secured by a mortgage of the same date, naming the same mortgagee, and executed by the Gustins in the same manner as the prior mortgage.*

In explanation of the consideration for which the instruments were executed, it appears that for some time before the giving of the mortgages, McGinley, Ponting, and Henry K. Gustin had engaged in numerous business ventures and transactions. Differences had arisen between them; and, thereafter, three lawsuits had been commenced: one, by McGinley and Ponting against the Gustins, to foreclose a claimed lien of $16,000 on the lands here involved; another, by the same parties against Henry K. Gustin, claiming damages of $20,000; and the third, a foreclosure suit by McGinley against Henry K. Gustin, on an indebtedness of $7,000. While the three suits were pending, and during the trial of one of them, an agreement was entered into, and the two mortgages and four notes were eventually executed and delivered in settlement of all of the litigation.

Shortly after the execution of the above notes, McGinley assigned, by indorsement, one of the notes, bearing date of September 17, 1926, to Ponting; and Ponting assigned one of his notes bearing date of

---

* The mortgages were recorded on September 18, 1926, and July 2, 1927, respectively.—Reporter.

October 14, 1926, to McGinley, with the result that each of the payees had one note for $7,500, dated September 17, 1926, and one, dated October 14, 1926.

William McGinley, at the time of the above transactions, and for many years prior thereto, was an active business man of large interests, carrying on extensive financial transactions with the Continental National Bank, of Fort Worth, Texas. He was the president of the McGinley Corporation, and the principal stockholder in the McGinley-Sigler Corporation. He was also a heavy borrower at the Continental National Bank, as were the two corporations whose paper was indorsed by him. On June 30, 1928, the McGinley Corporation was indebted to the bank on direct liability in the sum of $55,000, and McGinley was indirectly liable on indebtedness to the amount of more than $65,000. On the above date, he delivered to the bank the two notes held by him and the two mortgages which ran to McGinley as trustee for himself and Ponting—together with many other securities—and accepted therefor a receipt from the bank, which, in part, recited:

"That in the event said Wm. McGinley, the McGinley Corporation and/or the McGinley-Sigler Corporation, or either of them, should at any time while these securities are so held by the Continental National Bank become indebted to said bank by note, acceptance, overdraft or otherwise, then, and in that event, these securities shall be deemed as pledged to said bank as security for said indebtedness and shall not be delivered to said Wm. McGinley until the indebtedness has been paid."

On July 26, 1932, Ponting assigned the two Gustin notes, held by him, to McGinley; and McGinley executed a formal assignment of these notes to the bank. On September 27, 1932, McGinley, having

previously delivered the two Gustin mortgages to the bank, as above-mentioned, formally executed two assignments of both mortgages to the bank, executing one assignment for himself, and the other, as trustee for himself and Ponting. At the time of these assignments, the indirect indebtedness of McGinley and the direct indebtedness of the McGinley Corporation to the bank was, approximately, $59,000.

Later, Ponting, on December 7, 1932, assigned all of his interest in the mortgages to the bank, at the same time selling to Jean W. Taylor his beneficial interest in the mortgage notes—which he had previously assigned to McGinley, and which McGinley had assigned to the bank.

The indebtedness of the McGinley Corporation has been continuous since McGinley's assignment of the mortgages to the bank, and at the time when plaintiff's bill was filed, Mr. McGinley had an indirect liability to the bank of $64,300, and the McGinley Corporation, a direct liability of $31,000. At the date of the hearing, when depositions were taken in Fort Worth, the corporation's direct indebtedness to the bank totalled approximately $25,000, on which Mr. McGinley was a co-obligor.

The mere recital of the foregoing facts makes it difficult to understand why defendants seriously contend that the bank is not the real party in interest. The bank held the assigned Gustin mortgages and notes as security for the payment of the loans of Mr. McGinley and the McGinley Corporation. The indebtedness was never paid. Whatever may be realized by foreclosure over and above the indebtedness to the bank would belong to McGinley and Ponting—except that Ponting sold his beneficial interest in the notes to Jean Taylor, who, thereby, succeeds to any rights that Ponting might otherwise have. Plaintiff has legal title to the notes and mortgages

by reason of assignment from both McGinley and Ponting; and Jean Taylor likewise recognizes legal title of plaintiff thereto.   Satisfaction of the indebtedness can be given defendants by plaintiff. See *Sharrar* v. *Wayne Savings Ass'n,* 254 Mich. 456; *Barak* v. *Detroit Apartments Corp.,* 232 Mich. 59; *Johnson* v. *National Fire Insurance Co.,* 254 Mich. 126.   *Cestuis que trustent* are not necessary parties herein.   Their rights cannot be affected by a collection of the indebtedness, and this litigation cannot be aided or varied by making them parties.   An assignee is a real party in interest, *Johnson* v. *National Fire Insurance Co., supra; Sharrar* v. *Wayne Savings Ass'n, supra;* and may sue in his own name, *Curry* v. *Raich,* 245 Mich. 146; and such assignee may join with his own claim, a claim which has been assigned to him.   *Dunnette* v. *Henry L. Doherty & Co.,* 252 Mich. 597.   The fact that Mr. McGinley died since the commencement of the suit does not affect the right of plaintiff to maintain its bill, as it had legal title to the mortgages.   The trust continues until its purpose is fulfilled.   See *Iron Cliffs Co.* v. *Beecher,* 50 Mich. 486; *Lyle* v. *Burke,* 40 Mich. 499.   The fact that plaintiff may be obliged to account to Mr. McGinley's estate rather than to Mr. McGinley cannot be of any possible concern to defendants.

Defendants contend that section 11 (k) (4) of the Federal reserve act (12 USCA, § 248 [k] [4]) prevents plaintiff from maintaining its suit.   This portion of the statute provides:

"No national bank shall receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes. Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account

and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the board of governors of the Federal reserve system.''

Prior to the acceptance of these notes and mortgages as security, plaintiff had been authorized to create a trust department. By assignment, it was empowered to collect by foreclosure on the mortgages and notes, which had been deposited with it as security for loans. The Ponting notes had been assigned by Ponting to McGinley, and, in turn, by McGinley to the bank. Furthermore, Ponting recognized, by the assignment, all of the McGinley assignments of notes and mortgages, and had authorized collection by the bank, at the time he sold his beneficial interests therein to Jean Taylor; and Jean Taylor later recognized title thereto as being in the bank. There can be no question that the bank had the substantial and outstanding interest in the notes and mortgages, and it had title by assignment.

The provisions of the statute do not forbid a national bank from foreclosing in order to collect on collateral pledged as security for loans; a national bank may accept a mortgage or an assignment of a mortgage in order to secure itself. *National Bank of Genesee* v. *Whitney*, 103 U. S. 99 (26 L. Ed. 433); *Reynolds* v. *Crawfordsville First National Bank*, 112 U. S. 405 (5 Sup. Ct. 213, 28 L. Ed. 733); and it may take an assignment of the interests of others who are interested in the subject matter of the collateral, and proceed for all parties concerned. *Miller* v. *King*, 223 U. S. 505 (32 Sup. Ct. 243, 56 L. Ed. 528). In this case, the bank could take assignments, even from other parties, and proceed to foreclose in its own interest, and in their behalf, in order to facilitate the collection of the indebtedness.

With regard to the claim that the trial court committed error in refusing to reopen the case after the hearing had been concluded as announced by the court, it appears that the trial of the case commenced on September 28, 1936, and proceeded for six days intermittently until plaintiff rested on October 13, 1936. Defendants then swore an adverse witness for cross-examination, and, thereafter, there followed a colloquy between counsel for defendants, the court, and counsel for plaintiff, that continued through 90 pages of the printed record. For the most part, this consists of a repetitious plaint of counsel for defendants of alleged nonproduction of evidence by plaintiff; and because a witness whose deposition had been taken by plaintiff at Fort Worth, Texas, had refused to answer certain questions, on the ground that they were no business of the defendants. All of these questions went to the right of plaintiff to maintain the suit. It was further specifically contended that plaintiff had not produced evidence on the trial which, in a generous or improvident offer, its counsel had agreed to present at the time the deposition was taken—and which plaintiff's counsel insisted had actually been produced.

After the most patient consideration, the trial court told counsel for defendants that they would be given a further opportunity to examine the witness and take other depositions at Fort Worth on the question of right of plaintiff to maintain the suit; but he directed them to present their proofs on the claim of fraud and duress, which, he said, they could proceed to do, and should do, at this stage of the case. Counsel, however, firmly contended that they had the right to take the depositions in question and thereafter secure a ruling of the court on a motion to dismiss plaintiff's bill, on the ground that the bank was not the real party in interest—and that

they had this right before introducing proof on the merits. After hearing their arguments, the court emphatically insisted upon defendants' completing their proofs on all issues except the right to maintain the suit, which was reserved for the deposition, and explicitly cautioned counsel for defendants that after the introduction of the evidence by deposition, he would not reopen and extend the case for further proofs on fraud and duress. The court pointedly said:

"But, I will not open the case for a defense on its merits after that testimony is taken.   *   *   *
"You are in perfect shape to go ahead and put in your defense on fraud and duress, as I see it. It is understood that I do not reopen it on the merits."

Nevertheless, defendants' counsel, deliberately ignoring the court's warning, determined to permit the conclusion of the hearing without presenting proofs on fraud and duress; and proceeded to Fort Worth to take the depositions, where they found out nothing new except that the indebtedness for which Mr. McGinley had assigned and deposited the mortgages and notes had existed from the time of such deposit to the time of the hearing of the suit. They further found that Ponting had sold his beneficial interests in the notes to Jean Taylor.

However, on their return, and upon the reading of the depositions in evidence, counsel for defendants again insisted on their right to go again to Fort Worth to take further depositions in order to introduce evidence of fraud and duress, claiming that they had been improperly limited to the legal question on the taking of the depositions. The court, nevertheless, reaffirmed its stand, agreeing, however, to reopen the case on the merits, on any showing by defendants of discovery of new matter subsequent to

his previous decision limiting further proofs on the merits—if such new matter was of a nature as would have entitled defendants to a new trial, if the case had theretofore been decided on the merits.

Defendants never made such a showing or offered to do so. There were vague statements made to the court by counsel for defendants suggesting a likelihood of showing fraud and duress, if they were in a position to produce further proof and additional records, but there was no showing that such records or testimony would be evidence sustaining the claim of defendants—nor was the court advised what defendants claimed they would be able to prove except, as is stated in their brief, that there were additional records and correspondence in Fort Worth which ''bore'' directly upon the offenses of fraud and duress. Thereafter, the trial court awarded plaintiff a decree and dismissed the cross bills of defendants.

None of the defendants testified in the case. The allegations of fraud and duress in the answers and cross bills are claims that McGinley and Ponting had commenced various legal proceedings against Gustin and his wife, when he was embarrassed financially, in a conspiracy to impair his credit and ruin him; that the said parties forced him to execute the notes and mortgage in 1926 when he was in a difficult financial situation.

We are of the opinion that the contentions of defendants are without merit. There was no showing of fraud and duress, and no showing of what defendants would prove by further depositions. The case was delayed on two different occasions for depositions in Fort Worth without proving anything in support of the claims of defendants. The court gave every reasonable opportunity to them to introduce their evidence. Another adjournment to take testimony in Fort Worth and, then, perhaps in Los

Angeles, as was intimated might be necessary, and then, presumably, other and numerous adjournments for piecemeal proofs, without any showing of what specifically was to be established, would unduly delay the already long-dragged-out suit, which has now been in course of litigation for upwards of six years. The trial court fixed a terminal point for the hearing and for trial tactics, which, incidentally, required the hearing of 20 separate motions and petitions throughout the course of the case. *Jarndyce* v. *Jarndyce*\* has not been recognized as authority in chancery practice during the past century, and the considerate and overpatient trial court most properly declined to be bound by procedure, so successfully there invoked, as a rule to be followed in this State. There was no error or abuse of discretion in the action of the trial court.

It is claimed that Florence Gustin's rights in the lands are not affected by the mortgage. In 1921 Mrs. Gustin executed a power of attorney to her husband, empowering him:

"1st. *To* purchase, rent, sell, exchange, *mortgage,* lease, *surrender,* manage, and in every way deal with real estate or *any interest* therein and to execute and deliver deeds, mortgages, leases, assignments, surrenders and other instruments.

"2d. To make, assume, purchase, discharge, assign, pledge, and in every way deal with mortgages of real or personal property, and to exercise all powers of sale, or other powers herein contained.

"3d. To purchase, assume, sell, mortgage, pledge, exchange, assign, surrender, give options to purchase, and in every way deal with timber leases of every kind, and by whomsoever issued; to work and operate limits, and the carrying on of lumber and other operations.

---

\* Dickens, *Bleak House.*—Reporter.

"4th. To purchase, assume, sell, mortgage, pledge, exchange, assign, transfer, lease, operate, give options to purchase, and every way deal with mines, minerals and mining rights.

"5th. *To sell, assign and transfer all my dower right,* title and interest in and to all real or other property now owned by him, or which may in the future be acquired, or owned by him.

"6th. Giving and granting unto my said attorney full *power and authority to do and perform* all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes as I might or could do if personally present; with full power of substitution and revocation; hereby ratifying and confirming all that my said attorney, or his substitute, shall lawfully do, or cause to be done, by virtue of these presents."

Henry Gustin, to whom this power of attorney was given, executed the mortgages in his own name and for his wife, by virtue of the power of attorney. He now appears as attorney for himself and his wife, claiming that the execution of the mortgage by him as attorney in fact for his wife did not subject her rights in the real estate to the mortgage, on the theory that his action on her behalf was unauthorized.

It is contended that, at the time he executed the mortgages, Henry Gustin was mortgaging his wife's dower interests—inasmuch as he and his wife did not become owners by the entireties until afterward in 1928; that while the power of attorney gave him the right to *sell, assign and transfer* all of his wife's dower rights, it did not give him the power to *mortgage* the same; that although the instrument enumerated powers to mortgage any interest she might have in real estate, and to perform every act necessary in the premises, nevertheless the powers were

restricted by the specific provision with regard to dower—under the rule that, where general provisions are followed by those specific or limited in character, the latter control.

We are of the opinion that the rule contended for does not here apply. There is no inconsistency between the various paragraphs of the instrument setting forth the powers of attorney, nor limitations of general powers, by a statement of limited powers. The obvious purpose of the instrument was to give the agent the broadest possible powers in dealing with any real estate in which Mrs. Gustin had an interest, and its provisions are to be construed in such a way as to give effect to the intention of the parties.

Dower interests are not usually separately mortgaged. Wives join in mortgages to enable the mortgagees to receive interests free from subsequent claims of dower. But such dower is inchoate at the time of mortgage. If dower becomes subject to a mortgage, it can be said that it is by virtue of barring dower to this extent, and not by mortgaging the inchoate right. The joinder of the wife in a mortgage is to bar dower, and while, in a sense, it could be spoken of as a mortgage of dower itself, it is really a surrender of an inchoate right, for it is difficult to conceive that a mortgagee, in return for a valuable consideration, would accept a mortgage alone of an inchoate right of dower. By this power of attorney, the attorney had the express power to *surrender* any interests that his wife might have in real estate. With the power to sell, assign and transfer the dower of his principal, as well as to surrender any right in real estate, such attorney has the right to give a mortgage on behalf of his wife, barring her right to dower. The mortgages in question, executed on behalf of Mrs. Gustin by her hus-

band, were fully authorized by the power of attorney.

With regard to timber rights claimed by defendant Killmaster through mesne conveyances, originating in a quitclaim deed executed by the Gustins in 1933, it follows, from our disposition of the foregoing issue, that Killmaster took subject to the mortgages now sought to be foreclosed and has no rights in the property which are not subordinate to those of plaintiff.

Certain matters set forth in defendants' statement of questions involved are not argued and are, therefore, deemed to be abandoned; other questions discussed are unnecessary to our determination.

Decree affirmed, with costs to plaintiff.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.