*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT R. HUTH, JR., Personal Representative of
the ESTATE OF EVELYN R. RAGSDALE,

        Plaintiff-Appellee,

and

SHRINERS HOSPITALS FOR CHILDREN,

        Intervening Plaintiff/Third-Party
        Plaintiff-Appellee,

v

KATIE BISHOP and TERRENCE BISHOP,

        Defendants-Appellants,

and

COMERICA BANK,

        Intervening Defendant/Third-Party
        Defendant-Appellee.

UNPUBLISHED
December 22, 2022

No. 358734
Macomb Probate Court
LC No. 2019-231077-CZ

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

      This dispute concerns whether the probate court correctly determined that intervening plaintiff/third-party plaintiff, Shriners Hospitals for Children, had the right to intervene in a dispute between plaintiff, Robert R. Huth, Jr., who sued as the Personal Representative of the Estate of Evelyn R. Ragsdale (the Ragsdale Estate), and defendants Katie and Terrence Bishop. Shriners sought to intervene in that action to prevent Huth from settling the case without recovering any of the money that the Bishops allegedly obtained at the expense of the Ragsdale Estate. Shriners claimed the right to intervene as the beneficiary of Evelyn's charitable trust with Comerica Bank

-1-

(Evelyn's SelecTrust), which would be liable for the payment of the Ragsdale Estate's debts and claims should the estate have insufficient readily marketable assets to cover its debts and claims. Shriners further asserted that it had the right to be subrogated to the Ragsdale Estate's claims against the Bishops. On appeal, the Bishops contend that the probate court erred in numerous respects that warrant dismissing Shriners from the case: they argue that the court erred by determining that Shriners had standing to object to Huth's proposed settlement with the Bishops, erred by refusing to authorize that settlement, erred by allowing Shriners to intervene, and erred by denying the Bishops' motion for summary disposition. They also argue that the probate court erred by ordering the Ragsdale Estate and Comerica to assign the estate's claims to Shriners. We conclude that the Bishops have not identified any errors that warrant relief; accordingly, we affirm.

## I. BASIC FACTS

In October 1998, Evelyn established her SelecTrust, which required Comerica, as trustee, to distribute the income to Evelyn during her life and then distribute the principal to the trust's beneficiaries after Evelyn's death. In September 2003, Evelyn named Shriners as the trust's beneficiary. Relevant to this dispute, the SelecTrust Agreement provided that, if the "readily marketable assets of the probate estate of the Settlor are insufficient . . . Trustee shall pay the legally enforceable debts of Settlor or such claims as have been duly allowed in the administration of Settlor's estate, including expenses of the last illness, funeral, administration expenses, and bequests under Settlor's Will."

In October 2013, Evelyn executed a will. She bequeathed several specific monetary gifts to individuals in her will. The total value of the gifts that Evelyn designated in her will equaled the approximate value of her cash holdings at the time: $730,000. In November 2015, Evelyn consolidated her banking accounts. In 2016, she removed her daughter's name and added Katie Bishop, her neighbor, to the bank accounts. The accounts had a combined value of approximately $590,000 at the time. On August 9, 2018, Evelyn died. Katie Bishop subsequently withdrew the money and closed Evelyn's accounts.

It is undisputed that the Ragsdale Estate held insufficient funds to cover its bequests and expenses. In June 2019, Huth caused the Ragsdale Estate to sue the Bishops, alleging that Katie Bishop had misappropriated the funds in Evelyn's bank accounts both during Evelyn's lifetime and after her death. However, after learning that Evelyn's SelecTrust appeared obligated to pay all the Ragsdale Estate's debts and claims, Huth petitioned the court to approve a settlement agreement with the Bishops. Per the agreement, the Bishops would not be required to return any funds to the estate, the SelecTrust would pay the estate's bequests and expenses, and Huth would dismiss the claims against the Bishops.

At the hearing to approve the settlement, a lawyer for Shriners objected to the settlement agreement because it would, in essence, require the SelecTrust to pay the estate's expenses. The lawyer opined that if Shriners (as the sole beneficiary for the SelecTrust) were required to pay the estate's claims, then Shriners should be equitably subrogated to the estate's claims against the Bishops. Following argument, the court denied the petition to approve the settlement. Later, the court granted Shriners' motion to intervene as a party plaintiff.

Thereafter, the court entered an order reflecting an agreement among the parties regarding how to proceed with Comerica's obligations under the SelecTrust agreement. The court's order required Comerica, in its role as trustee, to pay the Ragsdale Estate $750,000 for existing debts and claims, and to pay the estate another $150,000 to be held in reserve for the payment of claims and expenses. The order further provided that the reserve could not be used without the court's permission and that any funds left over after the estate's closure would be payable to Shriners.

In December 2020, the Bishops moved for summary disposition, arguing that Shriners lacked standing to intervene and had failed to file a pleading with its motion to intervene as required under MCR 2.209(C)(2). The Bishops also argued that Shriners was not a real party in interest and could not establish grounds for equitable subrogation of the Ragsdale Estate's claims against the Bishops. Finally, the Bishops asserted that any money that Shriners might recover for the estate would necessarily go to Terrence Bishop because he was the residual beneficiary in Evelyn's will. The Bishops also objected to Comerica not being joined to the action. In response, Shriners contended that it could recover under an equitable subrogation theory and that, even if it could not, Shriners was a co-plaintiff with Hugh, so it could intervene and pursue the estate's claims against the Bishops. Following a hearing on the motion, the trial court determined that Comerica was an essential party, that the Bishops should be granted leave to amend, and that the summary disposition motion against Shriners was premature.

The Bishops filed their first amended answer in May 2021, and Shriners filed a complaint in June 2021, bringing claims for equitable subrogation on the estate's claims against the Bishops and a claim for intentional and wrongful interference with an inheritance.[1] Shriners alleged that Evelyn placed Katie Bishop's name on her accounts with Comerica for convenience only. It further alleged that Katie Bishop wrongfully withdrew more than $500,000 from Evelyn's accounts, which left the estate insolvent.

In August 2021, the parties filed several motions. Relevant here, the Bishops filed a renewed motion to compel arbitration and Shriners moved to have the trial court approve an assignment of the chose in action. Following a hearing, the court granted the Bishops' motion to compel arbitration and granted Shriners' motion to approve assignment. The court ordered the Ragsdale Estate to remain open, but only to pay Comerica's legal fees and expenses and to pay the lawyer who initially opened the estate. The probate court dismissed the case without prejudice. The Bishops subsequently appealed in this Court.[2]

---

[1] Shriners also sued Comerica in a third-party complaint, alleging that Comerica breached its fiduciary duty to Shriners in managing the trust by failing to protect the interests of Shriners as the beneficiary of Evelyn's SelecTrust.

[2] Shriners challenges this Court's jurisdiction to consider the Bishops' appeal. It maintains that the probate court's order was not a final order because it did not adjudicate the claims. To be final, a judgment or order must both dispose of all the claims and adjudicate the rights and liabilities of all the parties. MCR 7.202(6)(a)(*i*). This Court has previously held that a dismissal for arbitration is a final order appealable of right. *Attorney General v Blue Cross Blue Shield of Mich*, 291 Mich

## II. SETTLEMENT AND INTERVENTION

### A. STANDARDS OF REVIEW

The Bishops raise several arguments related to the trial court's refusal to approve the settlement agreement and its decision to allow Shriners to intervene. This Court reviews de novo the proper interpretation of statutes, wills, and trusts. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005). Likewise, we review de novo whether a party has standing to assert a claim. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). When the law commits a matter to the probate court's discretion, this Court reviews the probate court's exercise of discretion for abuse. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). An abuse of discretion occurs if the probate court's decision fell outside the range of reasonable and principled outcomes. *Id*.

### B. MOOTNESS

We first address Shriners' argument that the Bishops' claims of error involving the probate court's decision to allow Shriners to intervene and contest Huth's petition for approval of the settlement are moot because the estate's claims have been assigned to Shriners. This Court will not decide moot issues; an issue is moot when it involves "nothing but abstract questions of law," such as one when "a subsequent event" has made "it impossible for this Court to grant relief." *Gleason v Kincaid*, 323 Mich App 308, 314-315; 917 NW2d 685 (2018). In this case, the proposed settlement agreement provided that the estate's claims against the Bishops would be dismissed with prejudice after Evelyn's SelecTrust funded her estate's bequests and debts. The agreement also included a release. If this Court were to conclude that the probate court abused its discretion when it considered Shriners' objections and refused to approve the settlement, this Court could approve the settlement retroactive to the date of the denial in November 2019. If that occurred then Shriners would not be able to bring the claims, even if subsequently assigned to it, because the settlement would be binding on Shriners as the successor in interest to the Ragsdale Estate. See *Mecosta Co Med Ctr v Metro Group Prop and Cas Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161650); slip op at 5 (stating that an assignee succeeds to the rights of the assignor at the time of the assignment). Therefore, because relief is possible, the claims of error are not moot.

### C. PETITION TO APPROVE SETTLEMENT

The Bishops argue that the trial court erred by considering Shriners' objection to Huth's petition to approve the settlement and by considering the objection to the settlement agreement. We disagree.

---

App 64, 76; 810 NW2d 603 (2010). In any event, to the extent that this Court might not have jurisdiction to hear this appeal as an appeal of right, we treat this appeal as an application for leave and grant the application. See *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998).

As the personal representative of the Ragsdale Estate, Huth had the authority to prosecute the claims against the Bishops for the protection of the estate. See MCL 700.3715(1)(x). He also had the authority to effect a fair and reasonable compromise. See MCL 700.3715(1)(q). Huth caused the Ragsdale Estate to sue the Bishops based on allegations that Katie Bishop misappropriated hundreds of thousands of dollars in funds that rightfully belonged to the estate. Notwithstanding the claims against the Bishops, after Huth learned that Evelyn's SelecTrust might be contractually obligated to pay the Ragsdale Estate for its expenses and bequests, Huth reached a settlement agreement with the Bishops that would have resulted in the abandonment of the Ragsdale Estate's claims against the Bishops without any recovery. He apparently agreed to the settlement because it would be simpler and less expensive to obtain the funds from Evelyn's SelecTrust than to continue the lawsuit against the Bishops. Indeed, Evelyn's SelecTrust Agreement stated that, on her death, Comerica would distribute all the funds to Shriners as her sole beneficiary. However, because Evelyn's SelecTrust was revocable, the money that she placed into it was—as a requirement of law—subject to certain expenses and claims involving her estate. See MCL 700.7605(1). Evelyn's SelecTrust Agreement recognized the obligation and extended it to also include unfunded bequests. Accordingly, Comerica agreed—in relevant part—that, if upon Evelyn's death, her probate estate did not have sufficient marketable assets to pay certain expenses, Comerica would use the trust corpus to pay the "legally enforceable debts" against her estate and claims against her estate that had been allowed, which included the bequests stated in her will.

The SelecTrust Agreement did not provide a method for resolving disputes over whether an asset was marketable, whether a debt was legally enforceable, whether a claim had been allowed, and whether a particular bequest was valid. Comerica, as the trustee, had significant discretion to contest whether an expense had been properly allowed, whether a debt was legally enforceable, and whether a particular bequest had remained unpaid and was unfunded. See MCL 700.7801. Comerica could, therefore, have contested some or all of the payments that Huth contended should be made by the trust. Comerica also had a duty to "take reasonable steps to take control of and protect the trust property," MCL 700.7810, and had the authority to effect a compromise concerning any dispute over the distribution of property owned by Evelyn's SelecTrust, see MCL 700.7816(1); MCL 700.7817(x). For that reason, Comerica had the authority to protect Shriners by requiring Huth to assign ownership of the Ragsdale Estate's chose in action—i.e., the lawsuit against the Bishops—as a condition precedent to fully funding the Ragsdale Estate's debts and claims. See *The Detroit Fire & Marine Ins Co v Aspinall*, 48 Mich 238, 240-241; 12 NW 214 (1882) (stating that, under principles of equity, a mortgage should be assigned to the lender who lent the money used by the estate to pay the decedent's debts, which included paying the debt underlying the mortgage). Comerica, however, did nothing to protect the trust's assets or its sole beneficiary. Instead, it simply agreed that the trust would be responsible for any and all expenses and bequests owed by the Ragsdale Estate.

Shriners appeared at the first hearing on the motion to approve the settlement and objected to it. Shriners asserted that neither Huth nor Comerica were acting to protect its interests. Shriners maintained that it had the right to intervene in the case because it was in effect paying the Ragsdale Estate's debts, so it should be subrogated to the estate's claims against the Bishops.

It is plain that Shriners had a significant interest in Huth's motion to approve the settlement agreement because the agreement would have resolved the underlying complaint and finalized the rights of the parties in a way that would have precluded the Ragsdale Estate from asserting that the Bishops' actions wrongfully depleted the estate. It is also clear that Huth had no intention of continuing the litigation against the Bishops and that Comerica had done nothing to dispute whether and to what extent Evelyn's SelecTrust should be responsible for the Ragsdale Estate's expenses and bequests. Comerica did not even take minimal steps to ensure that the Ragsdale Estate assigned whatever unmarketable assets it held in exchange for the payment of the estate's expenses and bequests. Under these circumstances, Shriners had a right to intervene. See MCR 2.209(A)(3) (stating that an applicant has a right to intervene when it "claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.").

The probate court recognized that Shriners might have a right to intervene under MCR 2.209(A)(3). For that reason, it determined that the "right thing to do" was to deny the request for approval in order to provide Shriners with an opportunity to intervene. Under the circumstances concerning the petition to approve the settlement, the probate court's decision to deny the request to approve the settlement fell within the range of reasonable and principled outcomes.

## D. PROCEDURAL REQUIREMENTS FOR INTERVENTION

In order to properly intervene, Shriners had to file a motion to request permission to do so. See MCR 2.209(C). Shriners had to "state the grounds for intervention" in its motion and had to include a "pleading stating the claim or defense for which intervention is sought." MCR 2.209(C)(2). Further, although MCR 2.209(A) does not include a standing requirement to intervene, this Court has recognized that an applicant for intervention must have standing to assert his or her claims upon being allowed to intervene. *Karrip v Cannon Twp*, 115 Mich App 726, 732; 321 NW2d 690 (1982).

The Bishops first contend that Shriners lacked standing to intervene. Michigan's standing doctrine is a "limited" and "prudential" requirement that may be met in several ways. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). A party has standing whenever he or she has a "legal cause of action" or meets the requirements for declaratory relief stated under MCR 2.605. *Id*. If neither criterion apply, then the trial court must determine whether, in relevant part, the litigant "has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Id*.

Shriners had a substantial interest in the outcome of the litigation between the Ragsdale Estate and the Bishops because if Huth were allowed to abandon or unreasonably settle the estate's claims against the Bishops, Shriners would be detrimentally affected in a manner different than the citizenry at large. Indeed, the proposed settlement would deprive the Ragsdale Estate of any direct means to recover funds that were allegedly wrongfully removed from Evelyn's accounts. Once the Ragsdale Estate lost the right to recover those funds, Evelyn's SelecTrust account would have to make up for the shortfall, and that would directly reduce the amount that would pass to Shriners under Evelyn's SelecTrust. Shriners, therefore, had standing to intervene.

A lawsuit must also be brought by the real party in interest. See MCR 2.201(B). Huth, as the personal representative of the Ragsdale Estate, was the real party in interest for purposes of suing to recover the funds. See *In re Rottenberg Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013) (stating that the real party in interest is the party that owns a claim even though another may have a beneficial interest). Comerica had a duty to protect the corpus of Evelyn's SelecTrust and so was the real party in interest for enforcing the terms of Evelyn's SelecTrust as against the Ragsdale Estate and the Ragsdale Estate's creditors and claimants. See *id*. Comerica did not take any steps to protect the corpus of Evelyn's SelecTrust even after it became clear that Huth was abandoning the claims against the Bishops. Under those circumstances, Shriners had the right to sue in equity to compel Comerica to take steps to protect the corpus from improper payments to the Ragsdale Estate's creditors or claimants, such as through an assignment of the claims, or to compel Comerica to seek a decree in equity subrogating the trust to the Ragsdale Estate's claims; in doing so, Shriners had the right to sue both the trustee and third-parties such as the Ragsdale Estate. See *Apollinari v Johnson*, 104 Mich App 673, 676; 305 NW2d 565 (1981), citing 2 Restatement Trusts, 2d, § 282(2), p 44 ("If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person."). Consequently, Shriners had standing to bring claims against Comerica Bank, the Ragsdale Estate, and the Bishops to protect its rights, see *Lansing Sch Ed Ass'n*, 487 Mich at 372; it was also a real party in interest for purposes of protecting its interests in Evelyn's SelecTrust, see *Apollinari*, 104 Mich App at 676, and it was an interested party within the meaning of MCR 2.209(3).

Although Shriners was an interested party and had standing to assert claims against the Bishops and the fiduciaries, it did not include a pleading with its motion to intervene. This Court has noted the importance of the pleading requirement: "Absent a complaint setting forth the intervening plaintiff's claim, the claim is never technically before the trial court so as to vest jurisdiction in the court to render a judgment upon the claim." *Kolar v Hudson*, 55 Mich App 114, 119; 222 NW2d 53 (1974). Nevertheless, this Court has refused to reverse a trial court's decision to grant an application to intervene when the applicant's motion was sufficient to inform the opposing party of the claims at issue. *SCD Chem Distrib, Inc v Maintenance Research Laboratory, Inc*, 191 Mich App 43, 45; 477 NW2d 434 (1991) (stating that this Court would not indulge an "overly technical reading of the rule" when its purposes have been met). Here, Shriners established that Huth had abandoned the Ragsdale Estate's claims against the Bishops and that he had taken steps to compel Comerica to transfer hundreds of thousands of dollars from Evelyn's SelecTrust that would otherwise have passed to Shriners. Shriners further showed that Comerica had done nothing to protect Shriners' interests from unwarranted payments. For that reason, it asked to intervene as a party plaintiff and asserted that it had the right to be subrogated to the Ragsdale Estate's claims against the Bishops. Consequently, although Shriners should have included a complaint with its motion, it nevertheless adequately identified its claims against the Bishops as an equitable claim in subrogation. As such, it sufficiently identified the claims for purposes of allowing intervention. See *id*. Moreover, the claims were before the probate court, so the probate court had jurisdiction to consider them. See *Kolar*, 55 Mich App at 119.

III. ORDER TO ASSIGN

The Bishops next argue that the trial court erred when it ordered the Ragsdale Estate to assign its claims to Evelyn's SelecTrust and ordered Evelyn's SelecTrust to assign those claims to

Shriners. First, they argue that the probate court erred when it approved the assignments because, in its view, the assignments defeated Evelyn's testamentary intent. They explain that Evelyn named Terrence Bishop as the residuary beneficiary under her will, so she intended the Ragsdale Estate's claims against the Bishops to benefit him, which was defeated by assigning the claims to a third party. When considering Evelyn's intent, Evelyn's estate plan must be considered as a whole. See, e.g., *Karam v Law Offices of Ralph J Kliber*, 253 Mich App 410, 422-423; 655 NW2d 614 (2002). Evelyn originally intended for approximately $1.8 million to pass to Shriners and for approximately $730,000 in bequests to pass from her bank accounts to specific persons and charities. However, Katie Bishop removed the last of Evelyn's funds from Evelyn's bank accounts, so the Ragsdale Estate had no funds with which to pay its expenses or bequests. Huth abandoned the Ragsdale Estate's claims against the Bishops because it was easier to shift the loss that they allegedly caused to Evelyn's SelecTrust. Although the SelecTrust had a contractual obligation to cover the Ragsdale Estate's debts and claims, that obligation was conditioned by certain factors, such as whether the claims had properly been allowed or the debts were legally enforceable, which Comerica could have contested on behalf of the SelecTrust. Additionally, Comerica could have conditioned payment on an assignment or could have sought an assignment through the doctrine of equitable subrogation.

Assignment under those circumstances would have been entirely consistent with Evelyn's estate plan as a whole because assignment to the SelecTrust would have ensured that the Ragsdale Estate was fully funded to effect Evelyn's intent. Stated another way, the Ragsdale Estate traded an asset with a contingent and speculative value that could not be realized without considerable expense for a sum certain that fully funded all its obligations. Huth had the authority to transfer the chose in action under those circumstances, see MCL 700.3703(1); MCL 700.3712; MCL 700.3715(x), and no reasonable person could conclude that that decision would have amounted to a breach of fiduciary duty because it would have saved the estate considerable expense and ensured that the estate's obligation were fully funded for every beneficiary under the will, see *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977) (stating that it is normally for the jury to determine whether the defendant's conduct breached the relevant standard of care unless the court believes that no reasonable person could find that the defendant breached the standard). The assignment also gave Evelyn's SelecTrust the opportunity to recoup some of the losses occasioned by the allegedly tortious conduct, which would maximize the benefit to the charity that Evelyn designated as her beneficiary under that trust. Consequently, considering the totality of the evidence, a reasonable finder of fact could conclude that the assignment best served Evelyn's testamentary wishes.

The Bishops also argue that the assignment was invalid because it caused the Ragsdale Estate to violate its duty to pass the claims to Terrence Bishop as the residuary beneficiary under Evelyn's will. Terrence Bishop had no right to any transfers from the Ragsdale Estate as its residual beneficiary until all the estate's debts and specific bequests were paid. And the Ragsdale Estate had no readily marketable assets with which to pay any debt or bequest before Evelyn's SelecTrust transferred funds to cover the estate's expenses and claims. To obtain such funds without the money from Evelyn's SelecTrust, Huth would have had to have litigated the estate's claims. If the estate prevailed, it would then have had to use the recovered funds to pay the estate's expenses and then distribute whatever remained to the will's beneficiaries. Terrence Bishop would only have been entitled to funds as a residual beneficiary if the funds recovered exceeded the

estate's expenses and bequests—which was clearly not going to be the case given the shortfall. Additionally, Evelyn's SelecTrust had no duty to provide the Ragsdale Estate with a surplus that could be passed to Terrence Bishop, and it had every right to insist that the Ragsdale Estate transfer the chose in action as a condition precedent to funding the Ragsdale Estate's debts and claims if the Ragsdale Estate would not pursue them. Consequently, the assignment did not harm Terrence Bishop as the residual beneficiary.

The Bishops maintain that any recovery by Shriners as an assignee would belong to Terrence Bishop as the residuary beneficiary under Evelyn's will. They explain that the assignment would be subject to existing equities, and they maintain that the terms of the will constitute an equitable limitation on the assignment. The Bishops' argument is not well taken. Although the assignee of a claim has no greater rights than the assignor, see *Innis v Heft*, 217 Mich 39, 43; 185 NW 767 (1921), once the claims are assigned, the assignor no longer owns the claims and has no power to bind the assignee, see *Saginaw Fin Corp v Detroit Lubricator Co*, 256 Mich 441, 443-444; 240 NW 44 (1932). The terms of Evelyn's will applied to property in her estate. See MCL 700.1104(b). The cause of action ceased to be part of the Ragsdale Estate once the probate court ordered assignment of the claims; accordingly, any recovery under the claims would not be subject to the terms of Evelyn's will. See *Continental Nat'l Bank v Gustin*, 297 Mich 134, 140-141; 297 NW 214 (1941) (holding that an assignment passes legal title to the assignee and that the assignee is the real party in interest at that point).

The Bishops also suggest that the assignment was invalid because it caused Comerica, as the trustee of Evelyn's SelecTrust to violate its fiduciary duties to the Bishops as beneficiaries of Evelyn's SelecTrust. The Bishops argue that they were beneficiaries of Evelyn's SelecTrust because Evelyn made bequests to them in her will and the Ragsdale Estate had insufficient funds to cover the bequest. As a result, Evelyn's SelecTrust had a contractual obligation to cover the bequest. Yet, the Bishops did not have a beneficial interest in Evelyn's SelecTrust. See MCL 700.7103(*l*)(*i*). Rather, if the Ragsdale Estate did not have readily marketable assets with which to pay its obligations, Evelyn's SelecTrust had a contractual obligation to pay the Ragsdale Estate's "legally enforceable debts" and to pay the claims "duly allowed" by the Ragsdale Estate's personal representative. Moreover, the SelecTrust's obligations to the Ragsdale Estate depended on the nature of the assets held by the Ragsdale Estate and whether the Ragsdale Estate had approved a claim or become legally obligated to pay a debt. For these reasons, the agreement governing Evelyn's SelecTrust established a debtor-creditor relationship between the Ragsdale Estate and Evelyn's SelecTrust, which itself depended on the existence of certain contingencies.

By transferring sufficient funds to cover all the Ragsdale Estate's debts and claims, Comerica satisfied any duty that it might have owed to the devisees whose bequests had been allowed by the Ragsdale Estate under either the terms of the agreement governing Evelyn's SelecTrust and any duties owed under MCL 700.7605(1) and MCL 700.7606(1). Comerica also had the authority to protect Shriners. It could do so by insisting that the Ragsdale Estate either prosecute its claims against the Bishops or by requiring the Ragsdale Estate to transfer the chose in action to Evelyn's SelecTrust to protect Shriners' rights as the beneficiary of Evelyn's SelecTrust. See MCL 700.7810; MCL 700.7812. Indeed, Evelyn granted Comerica the "sole discretion . . . to prosecute, defend, compromise, settle or abandon claims by or against" Evelyn's SelecTrust. And, if the Ragsdale Estate refused to transfer the asset while nevertheless requiring Evelyn's SelecTrust to cover the losses occasioned by the allegedly wrongful withdrawal of funds,

Comerica could have protected Shriners' rights by seeking subrogation to the Ragsdale Estate's claims. Comerica eventually agreed that it was proper to assign the chose in action to Shriners and fulfilled its fiduciary duty to Shriners, and nothing about that decision amounted to a violation of its duties that would warrant denying approval of the assignment.

In sum, the Bishops have not identified any errors that warrant setting aside the probate court's order assigning the claims against the Bishops to Evelyn's SelecTrust or Shriners.

## IV. SUMMARY DISPOSITION

The Bishops also argue that the probate court erred in several respects when it denied their motion for summary disposition. We have already determined that the probate court did not err when it determined that Shriners had standing to intervene, was a real party in interest, and that the probate court did not abuse its discretion when it allowed Shriners to intervene. Accordingly, the Bishops cannot establish that the probate court should have granted their motion for summary disposition premised on those grounds.

The Bishops also assert that the court should have dismissed Shriners' claim that it was entitled to a decree subrogating it to the Ragsdale Estate's claims against the Bishops. However, whether the probate court should have entered a decree in equity assigning the Ragsdale Estate's rights to Shriners under the doctrine of equitable subrogation is now moot. The probate court approved an assignment of the Ragsdale Estate's chose in action to Shriners. As such, Shriners now owns the chose in action and does not require an action in equity to compel the assignment. See *Mecosta Co Med Ctr*, ___ Mich at ___; slip op at 5. Consequently, we decline to consider whether the probate court erred when it denied the Bishops' motion for summary disposition of the claim for equitable subrogation because subsequent events have rendered it impossible for us to grant relief. See *Gleason*, 323 Mich App at 314-315.

Affirmed. As the prevailing party, Shriners may tax its costs. See MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan