*In re* BEATRICE ROTTENBERG LIVING TRUST

Docket No. 297984. Submitted March 12, 3013, at Detroit. Decided April 4, 2013, at 9:10 a.m.

Siblings Joan R. Lipsitz, Mark F. Rottenberg, and Lisa Friedman were the children of Everett Newton and Beatrice Rottenberg. Joan and her husband were officers and shareholders of five different corporations to which Everett made several loans totaling significantly more than $2 million. Some of the loans were never repaid, and the corporations were eventually liquidated and dissolved in bankruptcy. When Everett died, some of his tangible personal property was devised to Beatrice and the residue poured over into the Everett Newton Rottenberg Living Trust (ENR Trust), with Beatrice, Mark, and Joan serving as cotrustees and Beatrice being the lifetime income beneficiary of two marital subtrusts. Upon Beatrice's death, her estate poured over into the Beatrice Rottenberg Living Trust (BR Trust), with Mark and Joan as cotrustees. Lauren Underwood was subsequently appointed as the successor personal representative of Everett's estate and the sole successor trustee of the ENR Trust. Mark filed the petition in this case in the Oakland County Probate Court to remove Joan as a cotrustee of the BR Trust and surcharge her for alleged violations of her fiduciary duties. She in turn petitioned to have Mark removed as a cotrustee and surcharged. The court, Eugene Arthur Moore, J., removed Mark and Joan as cotrustees of the BR Trust and appointed John Yun as sole successor trustee. In a series of petitions and amended petitions by Mark and Joan alleging numerous violations of fiduciary duties, Mark sought an accounting by Joan of all the loans that Everett had made to the corporations and repayment to the BR Trust of the unpaid loans and Joan asserted that Everett had upon his death given her the right to seek repayment of the unpaid loans. Mark eventually sought a default judgment, and Joan moved for partial summary disposition, seeking a determination that she was not personally liable for repaying the outstanding loans. Mark also moved for partial summary judgment, arguing that Everett had not given Joan the right to seek repayment. The court denied Mark's

request for a default judgment and sanctions but granted Mark partial summary disposition, concluding that there was no gift. Joan filed a claim of appeal.

The Court of Appeals *held*:

1. The probate court's order was not a final order under MCR 5.801(B)(2) because it did not affect with finality the rights of the parties in this matter. The order left open several questions, including who was responsible for repaying the loans and what they were worth. Accordingly, the order was not appealable by right. Nevertheless, in the exercise of its discretion, the Court of Appeals treated Joan's claim of appeal as an application for leave to appeal and granted it.

2. Under MCL 700.1105(c), 700.7103($l$)($i$), and 700.7203(1), Mark had statutory standing in this case to invoke the probate court's jurisdiction with respect to the administration of the BR Trust. In general, however, MCR 2.201(B) requires that an action be prosecuted in the name of the real party in interest, that is, by the party who under the substantive law in question owns the claim asserted. Although the principle of statutory standing overlaps significantly with the real-party-in-interest rule, they are distinct concepts. The principle of statutory standing is jurisdictional: if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits. In contrast, the real-party-in-interest rule is a prudential limitation on a litigant's ability to raise the legal rights of another. A real party in interest is one who is vested with the right of action on a given claim even if another has the beneficial interest. Mark was not the proper party to pursue the instant claims concerning the ownership of the right to demand repayment of the loans. That right belonged exclusively to Underwood, the trustee of the ENR Trust. The essence of Mark's argument was that Everett had not given Joan the right to demand repayment of the loans and that the value of the outstanding loans should therefore be used to offset any distributive share to which Joan would otherwise be entitled. It is the duty of the trustee to administer the trust for the benefit of the beneficiaries, MCL 700.7801, to control and protect the property of the trust, MCL 700.7810, to enforce any claims of the trust, MCL 700.7812, and to marshal and collect outstanding trust property, MCL 700.7813(1). Because Mark was not the real party in interest, his claims should have been dismissed.

3. Any issues concerning the status or ownership of the loans and whether Everett gave the right to demand repayment of the

loans to Joan should have been litigated exclusively in the ENR Trust proceedings rather than this proceeding. Everett alone made the loans at issue and therefore held the exclusive right to demand repayment of the loans during his lifetime. The right to demand repayment of a loan or debt is a chose in action and therefore an item of intangible personal property. Under MCL 600.2921, the right survives death. Accordingly, under the terms of Everett's will, the right to demand repayment of the loans became an asset of the ENR Trust immediately upon Everett's death.

Order vacated and case remanded for further proceedings.

1. APPEAL — ORDERS — FINAL ORDERS — PROBATE COURT.

Final orders of a probate court that affect the rights of an interested person in a proceeding involving a decedent's estate or a trust are appealable by right to the Court of Appeals; the determination of which orders are final and which are not must be made on a case-by-case basis; the test of finality of a probate court order is whether it affects with finality the rights of the parties in the matter; if a party files a claim of appeal related to an order that is not a final order, the Court of Appeals has discretion to treat the claim of appeal as an application for leave to appeal and grant it (MCR 5.801[B][2], 7.205[D][2]).

2. ACTIONS — PROBATE COURT PROCEEDINGS — REAL PARTY IN INTEREST.

An action must be prosecuted in the name of the real party in interest, that is, one who is vested with the right of action on a given claim even if another has the beneficial interest; the rule requires that the claim be prosecuted by the party who under the substantive law in question owns the claim asserted; a proceeding in the probate court is an action for purposes of this rule (MCR 2.201[B], 5.101[A]).

*William Dobreff* for Mark F. Rottenberg.

*Prince Law Firm* (by *Shaheen I. Imami*) for Joan R. Lipsitz.

*LoPrete & Lyneis, P.C.* (by *Mary M. Lyneis*), for John Yun.

*Bingham Legal Group, PC* (by *Kristin A. Hughes*), for Lauren M. Underwood.

Before: JANSEN, P.J., and FITZGERALD and K. F. KELLY, JJ.

JANSEN, P.J. Respondent, Joan R. Lipsitz (Joan), appeals by right the probate court's order of April 29, 2010, granting partial summary disposition in favor of petitioner, Mark F. Rottenberg (Mark), on the ground that it was beyond genuine factual dispute that Dr. Everett Newton Rottenberg (Dr. Rottenberg) had not gifted to Joan the right to demand repayment of certain loans that he had made during his lifetime.[1] For the reasons set forth in this opinion, we vacate the probate court's order and remand for further proceedings.

### I. BASIC FACTS

Joan, Mark, and Lisa Friedman (Lisa)[2] are siblings. They are the only children of the late Dr. Rottenberg and the late Beatrice Rottenberg (Mrs. Rottenberg).

Joan and her husband, Robert Lipsitz, were officers and stockholders of five different corporations (collectively, "the ranch entities").[3] Together, the five ranch entities made up the Double JJ Ranch and Golf Resort in Oceana County, Michigan.

Dr. Rottenberg made several loans to the ranch entities by personal check during the 1990s and the

---

[1] Joan filed her claim of appeal with this Court on May 11, 2010. Mark argues in his brief on appeal that the probate court's order of April 29, 2010, was not a final order appealable by right under MCR 5.801(B)(2) and that this Court accordingly lacks jurisdiction to consider this appeal. This issue is addressed in part III of this opinion.

[2] Lisa is not a party on appeal.

[3] These five corporations were (1) Outdoor Resources, Inc., (2) Carpenter Lake Development, Inc., (3) Carpenter Ridge, Inc., (4) Double JJ Resort Ranch, Inc., and (5) American Appaloosas, Inc. Each of the ranch entities filed for bankruptcy on July 18, 2008, and all five corporations had been liquidated and dissolved as of 2010.

early 2000s, apparently totaling significantly more than $2 million. Some of these loans were repaid during Dr. Rottenberg's lifetime. Other loans were never repaid to Dr. Rottenberg.

Each of the checks written by Dr. Rottenberg was made payable to one of the ranch entities. None of the checks was made payable to Joan or her husband. A few of these checks contained the word "loan" on the memo line. However, the memo line was left blank on the majority of the checks. None of the later checks appears to have been accompanied by a promissory note or any other separate evidence of indebtedness. Neither Joan nor her husband executed personal guarantees promising to repay any of the loans from Dr. Rottenberg.

Dr. Rottenberg died testate on April 23, 2005.[4] Under the terms of Dr. Rottenberg's will, certain items of tangible, household personalty were devised to Mrs. Rottenberg. However, the residue of Dr. Rottenberg's estate poured over into the Everett Newton Rottenberg Living Trust (ENR Trust). The trust instrument specified that, upon the death of Dr. Rottenberg, the cotrustees of the ENR Trust would be Mrs. Rottenberg, Mark, and Joan. Upon the death, resignation, or incapacity of Mrs. Rottenberg, Mark and Joan were to remain as cotrustees of the ENR Trust.[5]

---

[4] On August 11, 2005, Mrs. Rottenberg opened her late husband's estate by filing an application for informal probate in the Oakland Probate Court. See *In re Rottenberg Estate* (Oakland Probate Case No. 2005-299590-DA). Initially, Mrs. Rottenberg served as personal representative of Dr. Rottenberg's estate. In May 2007, John Yun was appointed to serve as successor personal representative of Dr. Rottenberg's estate. It appears that Yun was replaced by Lauren Underwood as successor personal representative of Dr. Rottenberg's estate in February 2009.

[5] The probate court removed Mark and Joan as cotrustees of the ENR Trust in February 2009 and appointed Lauren Underwood as sole, successor trustee of the ENR Trust.

Under the terms of the ENR Trust instrument, two distinct subtrusts were established upon the death of Dr. Rottenberg: (1) a Marital Trust and (2) a Residuary Trust.[6] The Marital Trust was further divided into (1) a Marital Trust for Spouse and (2) a Terminable Interest Marital Trust for Spouse. Suffice it to say that Mrs. Rottenberg was, for all practical purposes, a lifetime income beneficiary of the two marital subtrusts.[7]

Mrs. Rottenberg died testate on April 16, 2008. Under the terms of Mrs. Rottenberg's will, most or all of her estate poured over into her own trust, the Beatrice Rottenberg Living Trust (BR Trust). The trust instrument specified that Mark and Joan were to serve as cotrustees of the BR Trust upon Mrs. Rottenberg's death.

On July 18, 2008, each of the five ranch entities filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Michigan.

## II. PROCEDURAL HISTORY

The instant proceedings began on April 14, 2006, when Mark filed a petition in the Oakland County

---

[6] The ENR Trust instrument also created a Generation Skipping Trust. The Generation Skipping Trust is not at issue in this appeal.

[7] We acknowledge that Mrs. Rottenberg was entitled to as much principal of the Marital Trust for Spouse as she *requested* during her lifetime, and as much principal of the Terminable Interest Marital Trust for Spouse as she *needed* during her lifetime. Mrs. Rottenberg was further entitled to as much income and principal of the Residuary Trust as she *needed* during her lifetime. However, the probate court record contains no evidence to establish that Mrs. Rottenberg ever requested or needed any of these additional amounts. We further acknowledge that certain provisions of the ENR Trust instrument gave Mrs. Rottenberg the power to appoint the principal and accumulated income of various subtrusts by way of her will or an *inter vivos* document. However, there is no evidence in the probate court record to indicate that Mrs. Rottenberg exercised any of these powers of appointment.

Probate Court to remove Joan as a cotrustee of the BR Trust and surcharge her for various alleged violations of her fiduciary duties. On May 2, 2006, Joan responded by filing a petition to remove Mark as a cotrustee of the BR Trust and surcharge him.

On October 12, 2007, Mark filed a subsequent petition to compel an accounting by Joan, including a full disclosure of all loans made by Dr. and Mrs. Rottenberg to the ranch entities. Mark claimed that, in addition to $400,000 in loans from Mrs. Rottenberg, Dr. Rottenberg had loaned more than $2 million to the ranch entities during his lifetime and many of these loans remained unpaid. Mark alleged that Joan had destroyed or concealed certain evidence, including evidence of the loans, and that she had also removed documents and money from Dr. Rottenberg's residence upon his death without accounting for it.

Joan asserted that many of the loans made by Dr. Rottenberg, especially his earlier loans, had already been repaid. Consistent with Joan's assertion, the probate court record contains evidence establishing that the ranch entities repaid at least $1,809,248.22 to Dr. Rottenberg between 2002 and 2004. These repayments were apparently for principal and interest on various earlier loans made by Dr. Rottenberg, including some that were evidenced by a promissory note dated February 22, 2003. Joan asserted that, upon his death, Dr. Rottenberg had gifted to her the right to seek repayment of the remaining loans that he had made to the ranch entities.

Mark then filed an amended petition. Among other things, Mark asserted that Joan and her husband had been commingling corporate funds among the five ranch entities. Mark alleged that Dr. Rottenberg had loaned more than $1.7 million to the ranch entities

between January 2, 1992, and March 23, 2000. He alleged that Dr. Rottenberg had loaned an additional $1.19 million to the ranch entities between January 23, 2002, and November 26, 2004, but that Joan had "concealed" the existence of these loans. Mark pointed to Joan's deposition of July 11, 2007, at which Joan acknowledged that Dr. Rottenberg had expected to be repaid.[8] Mark argued that Joan and her husband were "falsely claiming there were only $400,000 in outstanding loans," and suggested that the loans from Dr. Rottenberg to the ranch entities were repayable to either Mrs. Rottenberg or the BR Trust.

Joan also filed an amended petition. Among other things, Joan alleged that Mark had wasted or misused BR Trust proceeds without providing an accounting.

On or about May 28, 2008, the probate court removed both Mark and Joan as cotrustees of the BR Trust and appointed John Yun as sole, successor trustee of the BR Trust.

In an affidavit dated August 31, 2009, Joan admitted that her father had loaned substantial amounts to the ranch entities during his lifetime. However, Joan averred that by the time of Mrs. Rottenberg's death, the total amount remaining due on these loans was much less than the face value of the loans.

On August 12, 2009, Mark filed a petition for a default judgment and sanctions, claiming that Joan had concealed or destroyed evidence of many of the loans from Dr. Rottenberg, that Joan had given false testimony regarding these loans at her depositions, and that Joan was withholding significant sums that were payable to the BR Trust. Mark alleged that Joan had violated her duty of

---

[8] However, Joan also testified that her father had never specified a particular date by which the loans were to be repaid.

loyalty in several ways during her tenure as a cotrustee and asserted that she had never properly provided an accounting. Mark asserted that there was at least $1.85 million, plus significant interest, due and owing to the BR Trust in the form of outstanding, unpaid loans from Dr. Rottenberg to the ranch entities.

Joan objected to Mark's petition. She asserted that she had not engaged in misconduct and contended that Mark and his attorney had misrepresented the facts of the case and attempted to mislead the probate court.

Mark replied, asserting that the ranch entities owed at least $1.8 million in principal and $1,301,286 in interest on the various loans from Dr. Rottenberg. Mark alleged that Joan and her husband had "stolen" these loans and manipulated the books of the ranch entities to hide them. Specifically, Mark contended that Joan had altered the corporate books to show that the loans from Dr. Rottenberg were repayable to the Lipsitzes themselves. According to Mark, these loans were actually repayable to the BR Trust.

Joan admitted that the corporate books had been altered to show that the loans from Dr. Rottenberg were repayable to her and her husband. But she contended that this was done in accordance with the express wishes of Dr. Rottenberg, who had gifted to her the right to demand repayment of the outstanding loans upon his death.

On October 7, 2009, Mark filed a second petition for a default judgment, alleging that Joan had lied during her earlier depositions. In addition to repeating his previous allegations, Mark claimed that Joan had failed to disclose certain other information in her possession concerning the loans from Dr. Rottenberg. Mark again argued that Joan and her husband had fraudulently manipulated the financial records of the ranch entities

by reclassifying the loans from Dr. Rottenberg as loans that were repayable to the Lipsitzes.

In response, Joan asserted that Dr. Rottenberg "never expected to be repaid for any of the outstanding loans" and that Dr. Rottenberg had intended "that such loans were to become Joan's at [his] death." Joan also argued that Mark lacked standing to pursue any claims concerning the ownership of the outstanding loans because those claims belonged exclusively to the fiduciaries of Dr. Rottenberg's estate or the ENR Trust.

On September 1, 2009, Joan filed a motion for partial summary disposition, seeking a determination that it was beyond factual dispute that she was not personally liable for repaying the outstanding loans made by Dr. Rottenberg to the ranch entities. See MCR 2.116(C)(10). Among other things, Joan sought a judicial determination that the monies loaned to the ranch entities were "debts of the Ranch Entities and not of Joan Lipsitz." Joan admitted that she had purchased Mrs. Rottenberg's stock in the ranch entities in 2005 and had also agreed to assume personal liability for the $400,000 that her mother had loaned to the corporate entities. Joan contended that, beyond these notes for $400,000, she had never agreed to assume any of the other debts owed by the ranch entities to Dr. Rottenberg, the ENR Trust, or the BR Trust.

Mark responded on October 13, 2009. He claimed that because he had alleged in an earlier petition that Joan was personally liable for the loans from Dr. Rottenberg and Joan had failed to specifically respond to these allegations, the allegations were deemed admitted pursuant to MCR 2.111(E)(1).[9] Mark argued that be-

---

[9] MCR 2.111(E)(1) provides that "[a]llegations in a pleading that requires a responsive pleading, other than allegations of the amount of damage or the nature of the relief demanded, are admitted if not denied

cause this was a proceeding to surcharge Joan, as a former cotrustee of the BR Trust, and because he was a beneficiary of the BR Trust, he had standing to bring the instant petitions and seek repayment of the loans. Mark cited several instances, including e-mails, statements in court, and deposition testimony, wherein Joan had suggested that she would be willing to repay the loan obligations of the ranch entities out of her distributive share under the BR Trust.

Mark then filed an amended petition for default judgment and sanctions. Mark again argued that Joan and her husband had concealed and destroyed certain evidence of the loans from Dr. Rottenberg. Joan responded, asserting that as of the date of Dr. Rottenberg's death, the outstanding value of the loans from Dr. Rottenberg to the ranch entities was $1.85 million, and the outstanding value of the loans from Mrs. Rottenberg to the ranch entities was $400,000. Joan once again pointed out that she had agreed to assume liability for the $400,000 loaned by Mrs. Rottenberg.

On March 2, 2010, Mark filed a motion for partial summary disposition, arguing that it was beyond factual dispute that the right to demand repayment of the loans from Dr. Rottenberg to the ranch entities had not been gifted to Joan. See MCR 2.116(C)(10). Mark took issue with Joan's recent deposition testimony, in which Joan had testified that her father gave her the right to seek repayment of the loans as a gift upon his death. Mark pointed to several of Joan's previous depositions during which she had admitted that her father expected repayment.

in the responsive pleading." A petition filed in the probate court constitutes a "pleading" under the Michigan Court Rules. MCR 5.001(B)(2).

Joan reiterated her position that Dr. Rottenberg had given her the right to seek repayment of any loans to the ranch entities that remained outstanding at his death. Joan argued that there was no genuine issue of material fact and that all outstanding loans from Dr. Rottenberg to the ranch entities had been given to her as a personal gift.

Lauren Underwood, successor trustee of the ENR Trust and personal representative of Dr. Rottenberg's estate, responded to the motions for partial summary disposition on April 1, 2010. Underwood clarified that the $400,000 in loans from Mrs. Rottenberg had been purchased by Joan and subsequently repaid to the BR Trust. Underwood also clarified that, although it was true that Dr. Rottenberg had loaned substantial amounts to the ranch entities during his lifetime, "it has always been Joan's position that her father did not intend for those amounts to be repaid, but instead, intended for her to receive the loans as gifts after his death." Underwood took exception to Mark's assertion that the loans were repayable to the BR Trust. Underwood noted that the loans in question had been made by Dr. Rottenberg and that they would therefore be repayable to the ENR Trust, not the BR Trust.

Underwood asserted that, even if the probate court did have jurisdiction in the BR Trust proceedings to consider whether the loans had been gifted to Joan, there remained significant questions of fact that would preclude summary disposition. For example, Underwood noted that several of Mark's own filings were inconsistent with regard to the total amount of indebtedness, valuing the outstanding loans from Dr. Rottenberg to the ranch entities at $2 million, $2.25 million, $1.85 million, and $2.31 million respectively. Underwood requested that the probate court deny Mark's

motion for partial summary disposition and enter an order declaring that any claims concerning the ownership of the outstanding loans from Dr. Rottenberg properly belonged to her as the fiduciary of the ENR Trust and Dr. Rottenberg's estate.

John Yun, successor trustee of the BR Trust, concurred with Underwood's assertion that any claims concerning the outstanding loans from Dr. Rottenberg to the ranch entities should not be litigated in the BR Trust case.

The probate court entered an order denying Mark's request for a default judgment and for sanctions without prejudice. The court then held a hearing on the motions for partial summary disposition on April 29, 2010. Mark's attorney argued that "at the time of Everett Rottenberg's death, there were at least $2.25 million in loans owed to the Rottenbergs by the ranch entities," and that "the ... loans were not gifted to Joan Lipsitz prior to Everett Rottenberg's death." Counsel cited at least two occasions on which Joan had admitted under oath that the loans were repayable to her father. Joan's attorney remarked that the only issue to be decided by the probate court was whether Dr. Rottenberg had intended to give Joan the right to demand repayment of the loans that remained outstanding at his death. Joan's attorney suggested that such a gift could have been a present gift or a gift *causa mortis*. He argued that, at the very least, there were genuine issues of material fact that should be decided by a jury.[10]

Kevin Check, who had previously served as guardian ad litem for Mrs. Rottenberg,[11] noted that "Joan's

---

[10] It is undisputed that a jury had been demanded and that, at the time of the probate court's hearing on the motions for partial summary disposition, the court had already scheduled a jury trial on this issue.

[11] Check remained involved in these proceedings, at least to a minimal extent, even after Mrs. Rottenberg's death. Check is not a party on appeal.

testimony has, in fact, been . . . all over the board." But
Check confirmed that Joan had "clearly [and] un-
equivocally" testified, during at least one of her depo-
sitions, "that it was her understanding, based on the
conversations and dealings that she had with her father
and her mother, that it was . . . E. N. Rottenberg's
intent that when he passed away, that [the ranch]
entities would not have to repay his estate." The
probate court questioned aloud whether Joan's subjec-
tive beliefs concerning what her father had intended at
the time of his death would be admissible in evidence.

Underwood argued that, assuming the right to seek
repayment of the loans was not given to Joan as a gift,
the loans were clearly repayable to the ENR Trust or to
Dr. Rottenberg's estate, not to the BR Trust. Conse-
quently, Underwood asserted, any claims concerning
the loans should be litigated in the ENR Trust proceed-
ings. Indeed, Underwood noted that she was pursuing
these very issues in separate actions that she had filed
on behalf of the ENR Trust and Dr. Rottenberg's estate.
Yun again concurred with Underwood's arguments.

After having heard the arguments of the parties and
their counsel, the probate court observed in pertinent
part:

> . . . I think what we got here is somebody was deposed,
> and being deposed, [Joan] tried to answer the questions
> very honestly. And to date, from what I heard and I read all
> the briefs, and all the arguments in Court, I see no disputed
> facts. And the Court will grant the . . . partial summary
> [disposition] motion. And . . . the Court rules that
> it's . . . not a gift. But that doesn't say . . . who owes the
> loan, how much the loan is, or whether any of the loan has
> been repaid.

On April 29, 2010, the probate court entered an order
granting Mark's motion for partial summary disposi-

tion in part. The order stated merely that "Mark Rottenberg's motion for partial summary disposition regarding loans by [the Rottenbergs] to [the] Ranch Entities . . . is granted in part" and "[t]he court finds they are loans and not gifts."

### III. JURISDICTIONAL CHALLENGE

Mark argues in his brief on appeal that the probate court's order of April 29, 2010, was not a final order appealable by right under MCR 5.801(B)(2), and that this Court therefore lacks jurisdiction to consider this appeal.

With respect to probate cases, this Court has jurisdiction of an appeal of right from "[a] judgment or order . . . from which appeal of right to the Court of Appeals has been established by law or court rule." MCR 7.203(A)(2). In a proceeding involving a decedent's estate or trust, "[o]rders appealable of right to the Court of Appeals are defined as and limited to . . . final order[s] affecting the rights or interests of an interested person . . . ." MCR 5.801(B)(2); see also MCL 600.861(a) and MCL 700.1305. Those "final order[s]" of the probate court that are appealable by right to this Court are further "defined . . . and limited" by MCR 5.801(B)(2)(a) through (ee).

Joan asserts that the probate court's order of April 29, 2010, was appealable by right to this Court pursuant to MCR 5.801(B)(2)(o), because it was a final order of the probate court "determining title to or rights or interests in property[.]" "[T]he determination of which probate court orders are 'final' and which are not, for purposes of determining the appellate jurisdiction of this Court, has to be made on a case-by-case basis." *In re Miller Estate*, 106 Mich App 222, 224; 307 NW2d 450

(1981). "The test of finality of a probate court order is whether it affects with finality the rights of the parties in the subject matter." *Id.*

The probate court's order of April 29, 2010, was in no sense a "final order" within the meaning of MCR 5.801(B)(2). The order merely granted Mark's motion for partial summary disposition in part. The order did not "affect[] with finality the rights of the parties in the subject matter," *Miller Estate*, 106 Mich App at 224, because it left for another day the questions of who was responsible for repaying the loans, what the loans were worth, whether any of the loans had been repaid, and whether any of the loans had been forgiven. Accordingly, it was not appealable by right in this Court. MCR 5.801(B)(2); see also *Miller Estate*, 106 Mich App at 224-225. Nevertheless, in the exercise of our discretion, we have decided to treat Joan's claim of appeal as an application for leave to appeal and grant the application. See MCR 7.205(D)(2); *In re Investigative Subpoena*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003); *Guzowski v Detroit Racing Ass'n, Inc*, 130 Mich App 322, 324-326; 343 NW2d 536 (1983).

IV. REAL PARTY IN INTEREST

Joan argues that Mark was not the real party in interest for purposes of his claims concerning the ownership of the right to demand repayment of the loans from Dr. Rottenberg to the ranch entities. We agree.

Whether an individual is the real party in interest is a question of law that we review de novo. See *Rohde v Ann Arbor Pub Sch*, 265 Mich App 702, 705; 698 NW2d 402 (2005).

The probate court is a court of limited jurisdiction. *In re Lager Estate*, 286 Mich App 158, 162; 779 NW2d 310 (2009). The jurisdiction of the probate court is defined

by statute. Const 1963, art 6, § 15; *In re Wirsing,* 456 Mich 467, 472; 573 NW2d 51 (1998).

MCL 700.1302(b) provides, in relevant part, that the probate court has exclusive legal and equitable jurisdiction over "[a] proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary . . . ." In addition, the probate court has concurrent legal and equitable jurisdiction to "[d]etermine a property right or interest" with respect to a decedent's estate, trust, or protected individual. MCL 700.1303(1)(a). Without question, Mark is a "trust beneficiary" of the BR Trust. MCL 700.7103(*l*)(*i*); see also MCL 700.1103(d)(*i*). As a beneficiary, and therefore an "interested person," MCL 700.1105(c), Mark certainly had statutory standing in this case to invoke the probate court's jurisdiction with respect to the administration of the BR Trust, MCL 700.7201(1); MCL 700.7203(1).

However, although the principle of statutory standing overlaps significantly with the real-party-in-interest rule, they are distinct concepts. See *Kent v Northern California Regional Office of American Friends Serv Comm,* 497 F2d 1325, 1329 (CA 9, 1974). The principle of statutory standing is jurisdictional; if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits. *Miller v Allstate Ins Co,* 481 Mich 601, 608-612; 751 NW2d 463 (2008). In contrast, the real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another. See, e.g., *Elk Grove Unified Sch Dist v Newdow,* 542 US 1, 12; 124 S Ct 2301; 159 L Ed 2d 98 (2004); *Zurich Ins Co v Logitrans, Inc,* 297 F3d 528, 532 (CA 6, 2002).

"A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 95; 535 NW2d 529 (1995). The real-party-in-interest rule " 'requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted . . . .' " *Rite-Way Refuse Disposal, Inc v VanderPloeg*, 161 Mich App 274, 278; 409 NW2d 804 (1987) (citation omitted).

We conclude that Mark was not the proper party to pursue the instant claims concerning the ownership of the right to demand repayment of the loans from Dr. Rottenberg, which belonged exclusively to the trustee of the ENR Trust, Lauren Underwood. In general, "[a]n action must be prosecuted in the name of the real party in interest . . . ." MCR 2.201(B).[12] The essence of Mark's argument is that the right to demand repayment of the loans made by Dr. Rottenberg to the ranch entities was not gifted to Joan and that, among other things, the value of the outstanding loans should therefore be used to offset any distributive share to which Joan would otherwise be entitled. It is the duty of the trustee to administer the trust for the benefit of the beneficiaries, MCL 700.7801, to control and protect the property of the trust, MCL 700.7810, to enforce any claims of the trust, MCL 700.7812, and to marshal and collect outstanding trust property, MCL 700.7813(1). There can be no doubt that the trustee of the ENR Trust is the party who actually owns the claims asserted by Mark in this matter. See *Rite-Way*, 161 Mich App at 278; see also

---

[12] It is true that a trust proceeding, such as this, is not a "civil action." See MCR 5.101(A) and (B). But a proceeding is nonetheless one of the "forms of action" permitted in the probate court, MCR 5.101(A), and therefore constitutes an "action" for purposes of the real-party-in-interest rule of MCR 2.201(B), see *In re Brown*, 229 Mich App 496, 502; 582 NW2d 530 (1998); see also MCR 5.001(A).

*Kent*, 497 F2d at 1329. Because Mark was not the real party in interest, his claims should have been dismissed. See *Leite v Dow Chem Co*, 439 Mich 920 (1992).

### V. LITIGATING IN THE WRONG PROCEEDING

We also conclude that any issues concerning the status or ownership of the loans from Dr. Rottenberg to the ranch entities, and whether the right to demand repayment of these loans was ever gifted to Joan, should have been litigated exclusively in the ENR Trust proceedings.

Whether an issue has been litigated in the correct probate proceeding is a question of law. Questions of law are reviewed de novo on appeal. *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006); *In re Rudell Estate*, 286 Mich App 391, 403; 780 NW2d 884 (2009).

It is undisputed that the loans at issue in this matter were made solely by Dr. Rottenberg. Dr. Rottenberg therefore held the exclusive right to demand repayment of these loans during his lifetime. The right to demand repayment of a loan or debt is a chose in action, Black's Law Dictionary (7th ed), and therefore an item of intangible personal property, *Royal Oak Twp v City of Berkley*, 309 Mich 572, 580; 16 NW2d 83 (1944). Such a right survives death. MCL 600.2921. Accordingly, under the terms of Dr. Rottenberg's will, the right to demand repayment of the loans became an asset of the ENR Trust immediately upon Dr. Rottenberg's death.

We reiterate that Mrs. Rottenberg was, essentially, a lifetime income beneficiary of the two marital subtrusts only. However, even if the right to demand repayment of the loans from Dr. Rottenberg poured over into one of these two marital subtrusts, the most that could possibly have passed into the BR Trust, if anything at all, was the *accrued income* from the loans that would have

been payable to Mrs. Rottenberg during her lifetime.[13] As a preliminary matter, there was simply no evidence to establish that the right to demand repayment of the loans ever became an asset of one of the marital subtrusts rather than the Residuary Trust under the ENR Trust instrument. Nor was there evidence to establish that the right to demand repayment generated any *income* during Mrs. Rottenberg's lifetime. Lastly, there is no question that the balance of the right to demand repayment of the loans (i.e., whatever would have been left of this asset after the payment of any income that accrued during Mrs. Rottenberg's lifetime) remained an asset of the ENR Trust at all times and could not have, under any circumstances, passed into Mrs. Rottenberg's estate or the BR Trust.[14]

We fully acknowledge that "[a] proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and a determination regarding the validity, internal affairs, or settlement of a trust . . . ." MCL 700.7201(3). However, any questions concerning the ownership of the right to demand repayment of the loans from Dr. Rottenberg, and specifically whether this right was ever gifted to Joan, "relat[ed]" exclusively to the administration of the ENR Trust. See *id.* Indeed, any interest

---

[13] In general, income that accrues during the life of a lifetime income beneficiary, but is not marshaled and collected by the trustee until after the death of that beneficiary, passes into the estate of the lifetime income beneficiary rather than to the trust's remaindermen. See, e.g., Bogert, Trusts & Trustees (2d ed), § 818, pp 412, n 72; 1 Restatement Trusts, 2d, § 235A, p 570; *In re Appeal of New Britain Bank & Trust Co*, 39 Conn Supp 157, 160; 472 A2d 1305 (1983); *In re Davidson's Estate*, 287 Pa 354, 357; 135 A 130 (1926).

[14] As noted earlier, there was no evidence that Mrs. Rottenberg exercised any of the powers of appointment conferred upon her by the ENR Trust instrument. Importantly, she did not appoint the right to demand repayment of the loans to the BR Trust.

that the BR Trust has in the instant claims regarding the right to demand repayment of the loans from Dr. Rottenberg to the ranch entities is entirely derivative of the ENR Trust's interest in these same claims.[15] We conclude that any questions regarding the right to demand repayment of the loans from Dr. Rottenberg, and whether this right was ever gifted to Joan, should have been litigated exclusively in the ENR Trust proceedings and not in the BR Trust proceedings.

## VI. CONCLUSION

The question whether the right to demand repayment of the loans from Dr. Rottenberg to the ranch entities was gifted to Joan should not have been litigated in this case. Any claims pertaining to this question belong to the trustee of the ENR Trust and should have been litigated exclusively in the ENR Trust proceedings. We therefore vacate the probate court's order of April 29, 2010, and remand for further proceedings consistent with this opinion.

---

[15] Of course, there is always a remote possibility that additional discovery in one of the other proceedings or civil actions pending before the probate court will show that the right to demand repayment of the loans did pour over into one of the two marital subtrusts under the ENR Trust instrument, that this right of repayment did generate income during Mrs. Rottenberg's lifetime that was neither collected nor paid out to her, and that the interest in any accrued income therefore passed into the BR Trust under the terms of Mrs. Rottenberg's will. But as Underwood aptly observed at oral argument before this Court, the trustee of the BR Trust would be entitled to proceed against the trustee of the ENR Trust should such facts come to light. See MCL 700.7813(1); MCL 700.7817(x); see also MCL 700.7812. Indeed, we note that the trustee of the BR Trust is specifically authorized to "take reasonable steps to locate trust property and to compel a former trustee *or other person* to deliver trust property . . . ." MCL 700.7813(1) (emphasis added). The trustee of the ENR Trust would certainly constitute a "person" covered by this statute.

In light of our foregoing conclusions, we decline to reach the merits of Joan's argument that the right to demand repayment of the loans was gifted to her by her father or, alternatively, that there remained a genuine issue of material fact concerning whether the right to demand repayment of the loans was gifted to her by her father.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, no party having prevailed in full.

FITZGERALD and K. F. KELLY, JJ., concurred with JANSEN, P.J.