*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BELLEW, Special Fiduciary of the
THOMAS P. CORR REVOCABLE TRUST
AGREEMENT,

        Plaintiff-Appellant,

v

PATRICK F. CORR, MICHAEL J. CORR, SCOUT,
LLC, formerly known as TROMBE, LLC, CORR
COMMERCIAL REAL ESTATE, INC., formerly
known as FRANDORSON CORP., and
FRANDORSON PROPERTIES LIMITED
PARTNERSHIP,

        Defendants-Appellees.

UNPUBLISHED
May 12, 2022

No. 356236
Ingham Circuit Court
LC No. 20-000314-CB

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(7) (claim barred by res judicata). We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is the court-appointed special fiduciary of the Thomas P. Corr Revocable Trust Agreement (the Trust).[1]  The grantor of the Trust, Thomas Corr, was one of four brothers who

---

[1] Plaintiff was appointed the special fiduciary of the Trust by a Florida state court in 2018 as a result of separate litigation.  The order appointing plaintiff provides that plaintiff has "all power and authority of a trustee" to pursue claims "on behalf of the Trust against Frandorson Properties Limited Partnership or other persons or entities."  The parties do not appear to dispute plaintiff's authority to direct the Trust in the manner of a trustee.

-1-

formerly were members of a Michigan limited partnership, the Frandorson Properties Limited Partnership (Frandorson). Frandorson holds interests in a number of properties, including a 50% ownership interest in a Michigan limited liability company, Lansing Retail Center, L.L.C. (LRC). LRC in turn owns the Frandor Shopping Center (the Shopping Center), a family-owned business created, owned, and controlled by the Corr family in 1954. As of 1998, Frandorson was owned by a 1% general partner, Corr Commercial Real Estate, Inc. (CCRE), and three 33% limited partners, F. Jerome Corr, Howard Corr, and the Trust. Howard Corr later transferred his interest in Frandorson to Trombe, LLC (Trombe) (now known as defendant Scout, LLC); the owners of Trombe were defendant Patrick F. Corr (Patrick), defendant Michael J. Corr (Michael), and Timothy Corr (Timothy). CCRE, as the general partner, managed the affairs of Frandorson; CCRE also was the managing agent of the Shopping Center under a management contract entered into by CCRE and LRC. Patrick and Michael, who are brothers, are the primary shareholders and officers of CCRE. The Trust is also a shareholder of CCRE.

In 2016, Timothy, as a member of one of Frandorson's limited partners, Trombe, instituted an action asserting claims both individually and derivatively on behalf of Trombe, and by Trombe both individually and derivatively on behalf of Frandorson and CCRE, raising numerous allegations of mismanagement of Frandorson and CCRE by Patrick and Michael. The complaint asserted claims of breach of the Frandorson partnership agreement, breach of the management contract, and various other claims. The allegations included that various required disbursements to Frandorson's limited partners had not occurred, and that various limited partners had been taxed for money they had not in fact received.

The 2016 lawsuit was settled and the case was dismissed. The settlement agreement was signed by Frandorson. As a condition of the settlement, the trustees of the Trust approved the settlement agreement; the Trust received an increased ownership interest in Frandorson as a result of the settlement. The settlement agreement provided that the parties, on behalf of themselves and all "successors, . . . affiliates and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under or in concert with them," would "release[] and discharge[] the other Party" of all liabilities, "whether or not apparent or yet to be discovered, for any acts or omissions related to or arising from the Dispute, the Litigation, or any other matter between the Parties." The agreement further provided that the parties agreed to "giv[e] up forever any right to seek further monetary or other relief from the other Party, as broadly described in Section 2 above, for any acts or omissions as stated in the Litigation, up to and including the Effective Date."

In 2020, plaintiff brought suit, on behalf of the Trust, raising allegations of mismanagement of Frandorson by "CCRE, orchestrated by and with the aid of Patrick and Michael [as controllers of CCRE] and defendant Scout," and claiming that the Trust, as a limited partner of Frandorson, had been deprived of various cash distributions required by Frandorson's limited partnership agreement. The complaint also alleged that CCRE's actions had caused Frandorson's limited partners, including the Trust, to incur tax liability for funds that had not been distributed. Defendants moved for summary disposition on the basis of res judicata, contending that the allegations had already been raised, or could have been raised, in the 2016 lawsuit, and that Timothy had adequately represented the Trust's interests in that lawsuit. The trial court agreed

and granted defendants' motion, and later denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Similarly, this Court reviews de novo a trial court's decision to apply res judicata, *Foster v Foster*, ___ Mich ___, ___; ___ NW2d ___ (2022), slip op at 7, *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004), and "[w]hether an individual is the real party in interest," *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom*, 287 Mich App at 428-429 (citations omitted).]

## III. ANALYSIS

Plaintiff argues that the trial court erred by holding that the claims asserted in the 2020 lawsuit were barred by res judicata. "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair*, 470 Mich at 121. As our Supreme Court previously discussed, res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* In this case, the parties do not dispute that the 2016 litigation was decided on the merits. The parties also do not dispute that the Trust was not a named party to the 2016 lawsuit. Plaintiff contests, however, the trial court's determination that privity existed between Timothy and the Trust, and relatedly argues that Timothy was not the real party in interest in the 2016 litigation and therefore could not have adequately represented the Trust's interests. Plaintiff also argues that some of the current claims could not have been resolved in the 2016 litigation.

### A. PRIVITY

Plaintiff argues that there was no privity between Timothy and the Trust. We disagree.

Our Supreme Court has previously discussed the concept of privity

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.

The outer limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are presented and protected by the party in the litigation. [*Adair*, 470 Mich at 122 (citations omitted).]

"If the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another, . . . the interests are identical." *Id*. Our Supreme Court has emphasized that "a perfect identity of the parties is not required, only a 'substantial identity of interests' that are *adequately presented and protected* by the first litigant." *Id*. (emphasis added).

In 2015, before the filing of the 2016 lawsuit, Timothy sent a letter to the Trust's attorneys stating that the Trust "may be entitled to significant money that was not being properly distributed among the Frandorson Partnership's partners in the past and future coming." Enclosed with the letter was a copy of a document entitled "NOTICE OF DERIVATIVE ACTIONS – LEGAL DOCUMENT," which advised of Timothy's intent to file a derivative action on behalf of Frandorson, CCRE, and Trombe, and of his allegations that Patrick and Michael were mismanaging Frandorson and CCRE and essentially paying themselves improperly with money owed to Frandorson's limited partners. At the time of the 2016 litigation, the Trust held a 33% interest in Frandorson as a limited partner and a 33% interest in CCRE as a shareholder.

In 2016, Timothy filed his complaint, including the described derivative claims,[2] "to remedy Defendants' breaches of fiduciary duties, breaches of contract, and other counts as outlined in this verified complaint." Those other counts included shareholder and member oppression. Timothy made allegations against Patrick and Michael concerning mismanagement, self-dealing, excessive salaries, and other forms of compensation that violated their fiduciary duties to the Frandorson limited partners, which necessarily included the Trust as a limited partner of Frandorson. Additionally, Timothy alleged that Patrick and Michael had also breached their duties to CCRE and its shareholders, which necessarily included the Trust as a shareholder of CCRE. Similarly, Timothy alleged that CCRE, as the general partner of Frandorson, had breached its duties to Frandorson's limited partners.

Timothy further claimed that, despite the requirement that distributions from Frandorson be made pro rata to the limited partners, significant funds had not been dispersed; further, he alleged that, because of how the defendants handled money and taxes, "other partners [were] personally taxed on money they never received." Moreover, necessary "tax distributions on . . . or before April of each year annually" had not occurred in 2013 or 2014, and only a "partial distribution was made" in 2015. These claims related to the interests of Frandorson's limited partners, including the Trust.

---

[2] Plaintiff represents that Timothy's direct claims in the 2016 litigation were summarily dismissed. Plaintiff does not, however, provide any information regarding the basis for any such dismissal. More importantly, plaintiff does not explain how any such dismissal affects the analysis of privity.

As a limited partner of Frandorson and a shareholder of CCRE, the Trust's interests were necessarily implicated in the 2016 litigation. But the Trust also was itself a participant in the settlement that resolved that litigation. Indeed, as a condition of the settlement, the trustees of the Trust were explicitly required to sign the settlement agreement, and their signatures in fact appear under the language "[w]e hereby affirm and approve this Settlement Agreement." As part of the settlement, the Trust received an extra 5.5% ownership interest in Frandorson, raising its total ownership interest to at least 38.5%.

Nonetheless, plaintiff argues that because Timothy brought a derivative action (on behalf of Frandorson, CCRE, and Trombe), he by definition did not (and therefore could not adequately) represent the Trust's interests. However, plaintiff cites no persuasive authority to support this position. *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37; 191 NW2d 313 (1971), is factually distinguishable and has no bearing on a derivative action. And while we appreciate that the assertion of derivative claims is different in kind than the assertion of individual claims by the owners of derivatively-represented entities,[3] there can be no serious question that the core nature of the claims asserted in the 2016 litigation was the same as that asserted in the 2020 litigation, i.e., alleged wrongdoing by CCRE, Patrick and Michael, to the detriment of the limited partners of Frandorson (including the Trust). It matters not, for purposes of our privity analysis, whether Timothy properly labeled or litigated those claims as direct or derivative claims in the 2016 litigation; it matters only whether he was representing "the same legal right that [the Trust] is trying to assert" in the 2020 litigation, *Adair*, 470 Mich at 122. Further, whether the Trust's claims (as asserted in the 2020 litigation) were or could have been asserted in the 2016 litigation is a separate question from that of privity. With regard to privity, plaintiff has failed to satisfy its burden of establishing the basis for appellate relief. *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993).

For all of these reasons, we conclude that the trial court did not err by determining that privity existed between the Trust and Timothy.[4]

---

[3] See e.g, *Murphy v Inman*, ___ Mich ___, ___; ___ NW2d ___ (2022), slip op at 11-13 (clarifying the proper analytical distinction between direct and derivative actions).

[4] We note that the settlement agreement could be read as barring the Trust's claims, at least in part, under the doctrine of release. See MCR 2.116(C)(7). Frandorson was a party to the settlement agreement, which purported to release each party, on behalf of themselves and all "successors, . . . affiliates and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, *partners,* attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under or in concert with them." (Emphasis added). The Trust is a limited partner of Frandorson, and, as stated, explicitly approved the settlement agreement and its language. Because we affirm the trial court on the grounds of res judicata, we need not explore this issue further, but we note that the language of the settlement agreement appears to support an alternate ground for granting, at least in part, defendants' motion for summary disposition under MCR 2.116(C)(7).

## B. REAL PARTY IN INTEREST

Plaintiff relatedly argues that Timothy was not a real party in interest in 2016 and, accordingly, could not adequately represent the Trust's interests.[5] We disagree.

Plaintiff relies on MCR 2.201(B), which provides in relevant part:

An action must be prosecuted in the name of the real party in interest, subject to the following provisions:

(1) A personal representative, guardian, conservator, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a person authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought.

"[T]he real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another," and this Court has previously described a real party in interest as "one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Beatrice Rottenberg Living Trust*, 300 Mich App at 355-356 (quotation marks and citation omitted). This Court has stated that the real-party-in-interest rule mandates "that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted . . . ." *Id.* at 356 (quotation marks and citation omitted; alteration in original).

Plaintiff's argument is misplaced. Plaintiff appears to argue that Timothy could not bring derivative claims in the 2016 lawsuit. However, Timothy's ability to bring such claims was already decided by the trial court in that case, and no higher court has vacated that decision. Whether the trial court's rulings in the 2016 lawsuit reflected a proper exercise of its jurisdiction is not properly before us, as those rulings are not subject to collateral attack. See *Foster*, ___ Mich at ___, slip op at 10-12. Plaintiff's challenge to Timothy's right to prosecute the 2016 action, and to thereby avoid the res judicata effect of those rulings, is such an impermissible collateral attack. *Id.* Moreover, MCL 449.2001 and MCL 449.2002 explicitly allow for a limited partner to bring derivative claims on behalf of the limited partnership. The real-party-in-interest rule has an exception for "a person authorized by statute," and MCL 449.2001 and MCL 449.2002 are two such statutes. Plaintiff cites *Beatrice* for support, but that case has no bearing on the present appeal because it involved a trust beneficiary who improperly brought claims that the trustee was required to bring as the real party in interest.

## C. WHETHER CLAIMS COULD HAVE BEEN BROUGHT IN PRIOR LITIGATION

Plaintiff does not argue, generally, that the Trust's claims could not have been brought in the 2016 lawsuit. Rather, plaintiff argues only that *some* of the Trust's claims could not have been

---

[5] Plaintiff presents this argument in the context of challenging the trial court's ruling regarding privity. We do not see it as an issue relating to privity, however. Therefore, we address it as a stand-alone argument.

brought in the 2016 lawsuit because they occurred afterward and because they were continuing wrongs. We agree, in part.

Our Supreme Court "has taken a broad approach . . . , holding that [res judicata] bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich at 121. The Court also noted "that '[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical.' " *Id*. at 123 (citation omitted; alteration in original). There are two "alternative approaches used in determining the applicability of res judicata," which have been referred to as the "same evidence test" and the "same transaction test." *Id*. at 123-124 (quotation marks omitted). Our Supreme Court has accepted "the broader transactional test in Michigan" and stated that "[w]hether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." *Id*. at 124-125 (quotation marks and citation omitted; alterations in original).

Plaintiff argues that some of the Trust's claims could not have been brought as part of the 2016 lawsuit. More specifically, and without endeavoring to catalogue the post-settlement claims with precision, the allegations include improperly paying wages, as reflected in CCRE's 2017 tax returns; improperly issuing a 2017 K-1 to a trust beneficiary for $248,111 of phantom income; making inadequate distributions in 2017 and 2018; and improperly reallocating income to provide tax deductions.

We reject plaintiff's invitation to decide this issue on the basis of its "continuing wrong" theory. In support of this argument, plaintiff cites this Court's prior statement that "[a] covenant to keep in repair throughout the term of the lease is *capable of constant or continuous breach* and, thus, the fact that damages have been recovered for a breach of such a covenant *will not bar a second suit seeking damages suffered from the continuing breach* since the last recovery." *Plaza Investment Co v Abel*, 8 Mich App 19, 27; 153 NW2d 379 (1967) (emphasis added). However, *Plaza Investment* stands only for the principle that a covenant to repair in a lease is capable of continuous or repeated violation. We decline to extend *Plaza Investment* to the case before us, which, while it concerns allegations of multiple torts or breaches of contract, does not involve a claim for the "constant and continuous" breach of a lease agreement.[6]

However, we agree that, to the extent plaintiff's claims are based on alleged wrongful conduct occurring in 2017 and 2018, they stand on their own and are not barred by res judicata. Although the 2016 complaint included allegations of improper self-dealing and salaries, phantom income, inadequate distributions, and improper tax handling, the 2016 litigation could not have

---

[6] We note also that the general common-law "continuing wrongs" doctrine has been abrogated in Michigan. See *Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 288; 769 NW2d 234 (2009). Moreover, the effect of application of that doctrine, under the common law, was to toll the relevant limitations period—it is far from clear that the doctrine would have applied in any event to defeat res judicata. See *id.* at 280.

specifically addressed allegations of misconduct that had not yet occurred. Plaintiff's claims based on alleged 2017 and 2018 misconduct had not yet accrued when the 2016 suit was commenced and settled.[7] See *Frank v Linkler*, 500 Mich 133, 146-147; 894 NW2d 574 (2017) (noting that a claim generally accrues "at the time the wrong upon which the claim is based was done"); see also MCL 600.5827.

Affirmed with respect to plaintiff's claims that are based on alleged wrongful conduct that occurred before the 2016 lawsuit was resolved; reversed as to those claims that are based on alleged wrongful conduct that occurred after the resolution of the 2016 lawsuit. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[7] We note that the settlement agreement that resolved the 2016 litigation was dated October 20, 2016, and that it applied with respect to "any acts or omissions as stated in the [2016] Litigation *up to and including the Effective Date*" (emphasis added).