*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. A. RADER-MANCHA, Minor.

UNPUBLISHED
November 22, 2022

No.  360468
Wayne Circuit Court
Family Division
LC No.  2019-000033-NA

Before:  RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Respondent claims an appeal by right from the trial court's order finding that termination of her parental rights to her minor child was warranted under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(c)(*ii*) (additional conditions exist), and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to the parent). We affirm.

## I.  FACTS

In 2010, respondent's child, KAR, tested positive at birth for cocaine.  Shortly after his birth, respondent placed the child in a guardianship with Jovita Mancha, respondent's then partner. In 2018, Mancha died of a heroin overdose in the presence of KAR, who was then eight years old, leaving the child without supervision.  At that time, respondent was not a suitable custodian for the child because she was addicted to cocaine and lacked suitable housing.

After a preliminary hearing held in November 2018, the trial court ordered petitioner to take custody of KAR and to prepare an initial service plan.[1]  In March 2019, respondent failed to attend the adjudication hearing before the trial court.  At the conclusion of the hearing, the trial court assumed jurisdiction of the child.  Following a dispositional hearing, the trial court ordered respondent to submit to random drug screens, maintain contact with petitioner, attend supervised

---

[1] This case was initiated in Washtenaw Circuit Court, then transferred to Wayne Circuit Court, where a parent agency treatment plan was prepared.

visits with the child, participate in parenting classes, maintain suitable housing and income, and undergo a psychological evaluation and follow the recommendations of that evaluation.

The child was placed in foster care where he remained for three years while petitioner provided services to respondent in an effort to reunify respondent with the child, the main barrier to which was respondent's drug addiction. Petitioner prepared a parent agency treatment plan to address respondent's substance addiction and mental and emotional instability through substance abuse therapy. The plan also sought to address respondent's lack of parenting skills through parenting classes.

Respondent complied with some aspects of the treatment plan, but failed to stop her drug use. Respondent maintained contact with petitioner and frequently visited with the child. Respondent only occasionally submitted to the required drug screens; when she participated in the drug screening she frequently tested positive for cocaine and other drugs. Petitioner referred respondent for parenting classes numerous times; respondent initially failed to attend the classes, but eventually completed a parenting education program in March 2021. Respondent participated in a psychological evaluation, which resulted in a diagnosis of severe cocaine use disorder, cocaine induced bipolar and related disorder, and unspecified depressive disorder, and a recommendation that respondent attend substance abuse education and therapy. Although petitioner referred respondent for substance abuse counseling several times, respondent declined to schedule an appointment on the basis that she was already attending counseling elsewhere.

In December 2020, the foster care case worker evaluated respondent's housing and found it to be appropriate. However, in October 2021 respondent moved to Oklahoma with a partner whose parental rights to her own children previously had been terminated, which the foster care case worker testified made the home unsuitable for KAR. Respondent returned to Michigan in late November 2021.

On November 3, 2021, petitioner filed a supplemental petition seeking termination of respondent's parental rights to KAR. At the termination hearing, the foster care case worker testified that the components of the treatment plan were parenting classes, random drug screens, a psychological evaluation, individual therapy, suitable housing, legal income, attending visits with the child, maintaining contact with the agency, and attending all court hearings. She testified that respondent was offered 241 drug screens and had participated in only approximately 30 to 50 of the offered screens, some of which were positive for cocaine, fentanyl, and marijuana. As recently as November 26, 2021, respondent tested positive for cocaine. The foster care case worker testified that she referred respondent for individual counseling to address substance abuse five times, and also referred respondent once for individual counseling without substance abuse treatment, most recently in June 2021, but respondent did not participate.[2] The foster care case worker also provided bus tickets to respondent in response to respondent's concern that she lacked transportation for services.

___

[2] The foster care case worker testified that she also should have referred respondent to individual therapy on additional occasions, but neglected to do so.

Regarding visits with the child, the foster care case worker testified that of the 128 visits offered, respondent attended 96 and missed 32. The foster care case worker testified that there appeared to be a bond between respondent and the child, but that the relationship was friendly rather than that of parent and child, and that the child looked to his foster parents for his primary needs. The foster care case worker recommended that respondent's parental rights to KAR be terminated because KAR needed permanency and stability that respondent showed no ability to provide. His foster family was willing to adopt him, he had been in their care for three years, and respondent had not benefited from her treatment plan because she was still using drugs.

At the conclusion of the hearing, the trial court found that petitioner had established statutory grounds to support termination of respondent's parental rights under MCL 712A.19b(3) (c)(*i*), (c)(*ii*), and (j), finding that respondent's unabated substance abuse continued to be a barrier to reunification. On January 7, 2022, the trial court entered an order finding that statutory bases for terminating respondent's parental rights had been established by clear and convincing evidence.[3] At respondent's request, however, the trial court agreed to bifurcate the proceedings and hold a separate hearing regarding the best interests of the child, allowing time for a clinic report evaluating the child's best interests. On February 10, 2022, the trial court conducted a hearing on the best interests of the child, at the conclusion of which the trial court found that termination was in the child's best interests. The trial court entered an order terminating respondent's parental rights to the child on March 1, 2022.

## II. DISCUSSION

## A. JURISDICTION

We consider initially the question of this Court's jurisdiction in this matter. Respondent filed a claim of appeal from the trial court's January 7, 2022 order; that order did not terminate respondent's parental rights and was not a final order appealable as of right. See MCR 7.203(A)(1); MCR 7.202(6)(a)(i). The trial court entered a final order March 1, 2022 terminating respondent's parental rights. When an order appealed is not appealable as of right, this Court may dismiss the claim of appeal for lack of jurisdiction or may exercise the Court's discretion to treat the claim of appeal as an application for leave to appeal, and then grant the application. See *Royce v Laporte*, 501 Mich 1025 (2018). In the interests of judicial economy, we exercise this Court's discretion in this case and treat respondent's claim of appeal as an application for leave to appeal and grant the application. See *Rains v Rains*, 301 Mich App 313, 320 n 2; 836 NW2d 709 (2013); see also *In re Rottenberg Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

## B. REASONABLE EFFORTS

Respondent first contends that petitioner failed to make reasonable efforts to reunify her with KAR. We disagree.

Generally, to preserve a challenge to the reasonableness of the petitioner's efforts toward reunification, the respondent must raise the challenge at the time the services are offered. See *In*

---

[3] In addition, the trial court's order terminated the parental rights of KAR's unknown father.

*re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502; 358503); slip op at 1, citing *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). A later challenge during the trial court proceedings may be adequate to preserve the issue if the facts support a finding that the services being offered no longer were adequate. See *In re Atchley*, ___ Mich App at ___; slip op at 1. In this case, respondent was offered services for three years and participated in some of the services, but did not challenge the reasonableness of petitioner's efforts to reunify her with her child during that time. This issue therefore is unpreserved, and we review the issue for plain error affecting the respondent's substantial rights, meaning an obvious error that affected the outcome of the proceedings. See *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020). Reversal is not warranted unless the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks and citation omitted).

The Department of Health and Human Services (DHHS) generally has an affirmative duty to make reasonable efforts to reunify a parent with his or her child before seeking to terminate the parent's parental rights. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). Absent aggravating circumstances under MCL 712A.19a(2), the DHHS is required to adopt a service plan outlining the steps that both the agency and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

The petitioner, however, is not obligated to provide every possible service. See *In re Terry*, 240 Mich App 14, 27-28; 610 NW2d 563 (2000). Moreover, although the petitioner must expend reasonable efforts to provide services aimed at reunifying the parent and the child, the respondent parent has a "commensurate responsibility . . . to participate in the services that are offered," *In re Atchley*, ___ Mich App at ___; slip op at 2, quoting *In re Frey*, 297 Mich App at 248. The parent also must demonstrate that he or she sufficiently benefitted from the services. *In re Atchley*, ___ Mich App at ___; slip op at 2.

In this case, the main barrier to reunification was respondent's substance use. Respondent contends that she was not provided adequate access to substance-abuse treatment and, if given more time, treatment could have been successful. Contrary to respondent's argument, however, over the course of three years respondent was provided numerous services to address her substance abuse. At the termination hearing, the foster care case worker testified that respondent was offered 241 drug screens, but participated in only approximately 30 to 50 of the offered screens, some of which were positive for cocaine, fentanyl, and marijuana. As recently as November 26, 2021, respondent tested positive for cocaine. The agency referred respondent for counseling to address substance abuse numerous times, but respondent failed to participate. Respondent also argues that petitioner failed to accommodate her difficulties with transportation to drug screenings, but the record indicates that the foster care case worker accommodated respondent by finding drug screening locations close to her, providing bus tickets, and offering to provide drug screenings at times convenient to respondent.

Respondent also argues that the DHHS failed to offer a parent partner or a supportive visitation therapist. Respondent did not request these accommodations before the trial court and

fails to demonstrate that she would have fared better had these additional services been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). Moreover, petitioner was not obligated to provide every possible service. See *In re Terry*, 240 Mich App at 27-28.

Respondent also argues that petitioner should have reasonably accommodated her disability of anxiety. See *In re Hicks*, 500 Mich at 86. The DHHS must be aware of a respondent's disability, however, to trigger the requirement to modify services. *Id*. at 87. Respondent did not inform petitioner of her alleged disability other than to request that her drug screen take place at a safer location, which petitioner accommodated by finding another location. The foster care case worker also offered to administer drug screens to respondent, making herself available before and after work and on her days off. Respondent nonetheless failed to participate in most of the offered drug screens.

Respondent also contends that the services were not reasonable because the pandemic caused her to become disengaged from the case. A review of the record, however, shows that from the inception of the case, respondent failed to appear at the review hearings. Further, during the one-year gap in review hearings caused by the COVID-19 pandemic, the foster care case worker coordinated with respondent, and by the second review hearing after the break respondent was making progress on her case services plan. The record does not demonstrate a lack of services or failure to engage respondent. We conclude that the trial court did not err when it found that reasonable efforts were made.

## C. STATUTORY BASIS

Respondent contends that the trial court erred when it found that clear and convincing evidence demonstrated that one or more statutory basis for the termination of her parental rights existed. We disagree.

To terminate a respondent's parental rights, the petitioner must prove by clear and convincing evidence that termination is warranted under one or more of the statutory grounds set forth in MCL 712A.19b(3). *In re Baham*, 331 Mich App at 751. The statute provides, in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions,

the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(c)(*i*), (*ii*), and (j).]

We review for clear error the trial court's determination that clear and convincing evidence demonstrates a statutory basis for termination of parental rights, as well as the trial court's factual findings. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). In this case, the trial court did not clearly err when it found that a statutory basis for termination of respondent's parental rights existed under MCL 712A.19b(3)(c)(*i*). The child was placed in foster care after his legal guardian died of a drug overdose in November 2018. At that time, respondent was not a suitable caretaker for the child because she was using illegal drugs and lacked suitable housing. The child remained in foster care for three years while respondent sporadically participated in services and failed to overcome her drug addiction, testing positive for cocaine just weeks before the termination hearing. The trial court therefore did not err by finding that clear and convincing evidence demonstrated that the conditions that led to adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age.

The trial court also did not err when it found that a statutory basis existed under MCL 712A.19b(3)(j) because clear and convincing evidence established that the child is likely to be harmed if reunified with respondent. Respondent placed KAR in a guardianship shortly after the child was born. At the best-interests hearing, respondent explained that KAR's guardian mentally and physically abused her, causing her to leave the relationship. Nonetheless, respondent left KAR in the guardian's care for eight years. Shortly before her parental rights were terminated, respondent moved to Oklahoma although the child remained in foster care in Michigan. The person with whom respondent moved to Oklahoma had had her parental rights to her children terminated. Moreover, respondent's failure to participate in and benefit from a service plan is evidence that the child will be harmed if returned to respondent's care. See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). The trial court did not err when it found sufficient evidence to warrant termination of respondent's parental rights under MCL 712A.19b(3)(j).[4]

---

[4] Because only one statutory basis for termination of parental rights need be proved, we decline to reach whether the trial court erred by finding that termination also was warranted under MCL 712A.19b(3)(c)(*ii*). See *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016).

## C. BEST INTERESTS

Respondent also contends that the trial court erred when it found it was in KAR's best interests to terminate respondent's parental rights. We disagree.

When a statutory basis for terminating a respondent's parental rights has been established, the trial court is required to terminate the respondent's parental rights if a preponderance of the evidence establishes that termination is in the child's best interests. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). We review for clear error the trial court's decision regarding the child's best interests. *Id*. at 226.

When determining whether termination is in the child's best interests, the court should consider factors including "[t]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Gonzales/Martinez Minors*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, respondent argues that the trial court failed to consider relevant factors, such as her close bond with the child and her frequent visits with the child. The foster care caseworker testified that respondent visited often with the child and had a friendly relationship with him, albeit not a parent-child relationship. However, at the time of termination respondent continued to use cocaine and had failed to comply with most aspects of the service plan. Respondent had placed the child with a guardian who also used illegal drugs. Shortly before termination, respondent moved to Oklahoma although the child remained in foster care in Michigan. Respondent's partner in Oklahoma had had her parental rights to her own children terminated. By contrast, the child's need for permanency and stability were being met by his foster family who are willing to adopt him. The relevant factors support the trial court's finding that terminating respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola